## LEONARD SAUL BLONDES *v.* STATE OF MARYLAND

[No. 300, September Term, 1973.]

*Decided February 11, 1974.*

The cause was argued before ORTH, C. J., and MORTON and POWERS, JJ.

*Joseph B. Simpson, Jr.,* with whom were *Vivian V.*

716

*Simpson, H. Algire McFaul, Joseph J. D'Erasmo* and *Simpson & Simpson* on the brief, for appellant.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County, Reginald W. Bours, III, Deputy State's Attorney for Montgomery County,* and *Thomas L. Craven, Special Prosecutor,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

LEONARD SAUL BLONDES, a lawyer and a Montgomery County Delegate to the General Assembly of Maryland from 1962 to 1970, was charged, in the 1st and 2nd counts of indictment 12157, with violating Code, Art. 27, § 23, providing that it shall constitute the offense of bribery for "any member of the General Assembly of Maryland * * * [to] demand or receive any bribe, fee, reward or testimonial for the purpose of influencing him in the performance of his official duties, or for neglecting or failing to perform the same." [1] On 9 December 1971 Blondes was found guilty under the 1st and 2nd counts at a bench trial in the Circuit Court for Montgomery County and the same day he was sentenced generally to pay a fine of $2,500 and costs. [2]

On appeal to this Court we reversed the judgment. We found, under the Supreme Court's interpretation of legislative privilege as applied to Art. 10 of the Maryland Declaration of Rights and § 18 of Art. III of the Maryland Constitution, that substantive evidence of legislative acts

---

1. The indictment presented that on 10 December 1967 Blondes demanded (1st count), and on 4 January 1968, he received (2nd count), a fee of $5,000 from "The Montgomery County Bowling Proprietors' Association, C. Edward Goldberg, Leroy Rinaldi, William S. Glennie, Revelle Stuart Armiger, and persons unknown * * * for the purpose of influencing * * * [him] in the performance of his official duties."

The 3rd count of the indictment charged conspiracy to violate Code, Art. 27, § 23, and the 4th and 5th counts charged malfeasance in office. Motion to dismiss the indictment as to counts 3, 4 and 5 was granted as barred by limitations.

2. Code, Art. 27, § 23 also prescribes that every person convicted thereunder "shall also be forever disfranchised and disqualified from holding any office of trust or profit in this State; * * *."

performed by Blondes, introduced in evidence against him, over his objection, were inadmissible, and because not harmless, required a retrial, the provisions of § 50 of Article III not nullifying the Speech and Debate clauses insofar as a bribery prosecution of a member of the General Assembly was concerned. The trial court having erred in relying upon inadmissible substantive evidence of Blondes's legislative acts, we ordered a new trial purged of references to legislative acts prohibited by the legislative privilege. *Blondes v. State,* 16 Md. App. 165, decided 11 September 1972.

On 2 April 1973 Blondes filed a motion to dismiss the indictment. In reversing the judgment rendered at the first trial we construed § 50 of Art. III of the Maryland Constitution "as a limited mandate providing for punishment of State legislators guilty of bribery if indictment and prosecution therefor can be accomplished without impinging on the legislative privilege by introducing evidence of legislative acts." Blondes alleged that the indictment against him was found solely as a result of the Grand Jury's inquiry into his legislative motives, communications and acts as a member of the General Assembly of Maryland. He claimed that the "inquiry is and was constitutionally prohibited and beyond the jurisdiction of the Grand Jury as a part of the judicial branch of the Government and, therefore, the Indictment so returned exceeded the jurisdiction of the Grand Jury and must be dismissed." The State answered the motion on 4 April. It alleged that the indictment "was based in part on, or returned in spite of, the voluntary testimony of the defendant himself as to his legislative motives, communications and acts," the conclusion that the indictment was based "solely" upon such evidence being "totally speculative". It claimed that if the indictment, returned by a legally constituted and unbiased grand jury, were valid on its face, it was enough to call for trial on the merits. It was aware, however, of the language in *Blondes,* and recognizing Blondes's "own express desire not to be tried by indictment," suggested that the court accept a Bill of Information in lieu of the challenged indictment. On 4 April

1973 the State filed an information. Its two counts were identical to the first two counts in indictment 12157. A hearing on the motion to dismiss the indictment was held the same day. Blondes argued that the indictment should be dismissed because it was returned on the basis of improper evidence. He pointed to the language in *Blondes v. State, supra,* above quoted, construing § 50 of Art. III "as a limited mandate providing for punishment of State legislators guilty of bribery if indictment and prosecution therefor can be accomplished without impinging on the legislative privilege by introducing evidence of legislative acts." The State, upon inquiry by the court, said that it intended to proceed to trial on the information and not on the indictment. The court suggested that the motion to dismiss the indictment was moot "if the State is not going to try this case on the basis of the indictment but only on an information." [3] It saw no reason, in the circumstances, to argue the indictment. It said to defense counsel: "If the State doesn't call the indictment for trial, why must I make a disposition of the motion to dismiss nonexistent prosecution? The case is prosecuted on the information. * * * If your client were tried under the information and found not guilty, certainly that would be 'res adjudicata', I should think, as to the indictment, and if found guilty, he certainly could claim — you certainly could claim double jeopardy if the State ever tried to bring him on for trial under the indictment." The defense agreed, but thought the indictment should be "nolprossed or withdrawn or dismissed, or some definitive kind of action taken in reference to the indictment." The court opined that the disposition of the indictment was the option of the State's Attorney. The State suggested that Blondes be arraigned on the information and the case set for trial thereon. Blondes objected and the court agreed that the defense should have time to study the information before arraignment. Trial had

---

**3.** Blondes thought that he should "have some reasonable opportunity to consider whether or not we can plead in some manner to this information." He conceded that limitations would not be a bar because the offense charged was a penitentiary misdemeanor. Code, Art. 57, § 11; *Duvall v. State,* 5 Md. App. 484.

been set for 10 April and the court said it was prepared to proceed on that date. It reserved ruling on the motion to dismiss the indictment.

Upon motion made by Blondes and hearing had on 5 April, the court, Mathias, J., entered an order removing the case from the trial calendar for 10 April and assigned it for trial in the Circuit Court for Montgomery County on 7 May before Prendergast, J., all motions to be filed on or before 18 April. On 18 April Blondes filed a motion to dismiss the information. The motion alleged that the information had been filed for the sole benefit of the State without request by Blondes so as "to deprive the defendant of the benefit of the ruling of the Court of Special Appeals in limiting the evidence properly to be offered upon a retrial and to avoid a ruling on the defendant's Motions to Dismiss the Indictment and to Inspect the Grand Jury Minutes." [4] Blondes claimed that the State had elected to abandon prosecution under the indictment and by so doing the commencement of prosecution under the information would place him twice in jeopardy and deny him due process of law. He further averred that the filing of the information was in violation of Maryland Rules 708 and 709.

The case came on for trial on 7 May 1973. The State declared that it was going to call the criminal information for trial. Defense counsel said that if that were the State's election, he would like it to dispose of the indictment. The court thought the motion to dismiss the information should be next considered and heard from counsel on that motion. The defense argued that the prohibition against double jeopardy precluded trial on the information. The remand for a new trial contemplated trial on the indictment and if that is abandoned the prosecution is abandoned. The defense also argued that the filing of the information violated Rules 708 and 709 in that an information could not be filed for a penitentiary misdemeanor without the consent of the accused. After extensive argument, the State proposed, in order "to expedite these proceedings and to simplify the

4. Motion to Inspect the Grand Jury Minutes was filed on 4 April 1973.

considerations before the court" that it "enter a nolle prosequi to both of the remaining counts in the indictment only; namely, the first and second counts, and may the record reflect that this action is being taken prior to the time when the indictment or any other charge was called for trial, but at any rate, pursuant to the provisions of Maryland Rule 711, I would enter a nolle prosequi to the indictment." After further discussion, the State requested that "the court arraign the Defendant on the information, that the Court reserve its ruling at this time as to the motion to dismiss the information and that the court proceed with trial." The court heard further from defense counsel and thereupon said with respect to the motion to dismiss the information: "I am not persuaded that I should grant that motion, and I overrule it." It gave at length its reasons therefor and concluded: "At any rate, I can always reconsider before the trial is concluded, but my disposition is, and I do rule that the motion to dismiss the criminal information is overruled." The defense requested and was granted a short recess. When court reconvened, defense counsel presented another point on the motion which he had not pressed in argument but had set out in the written motion — that the information was based on the same evidence produced before the Grand Jury that returned the indictment and that it was the result of Blondes's "legislative motives and so forth." The court agreed that the point had not been abandoned. Defense counsel then raised another point: "I would suggest to the court and urge that the nolle as to the indictment in this case, which is in the identical words as the information in the case, and each of those filed in the same criminal proceedings, Your Honor, would be tantamount to a nolle of the information." The court did not think so. The court inquired if all the discovery had been disposed of or if there were anything "you think you should in all fairness have before the case is called for trial that you don't have?" There was a brief colloquy on the matter between the court and the State. Defense counsel interjected at this point:

"MR. SIMPSON [Defense Counsel]: If Your Honor pleases, I had not anticipated the Court's ruling,

and I feel that now I should advise the Court that I in view of the Court's ruling just recently announced, that I should appeal from that ruling, and will do so in writing.

I realize that is unusual.

I had not anticipated it. I have authority to the effect that appeal will lie—

THE COURT: I think it does.

MR. SIMPSON: — prior to the trial on the merits under the circumstances of this situation.

THE COURT: I think you could proceed in either one of two ways. I think you could not appeal and still preserve a point, but I think it was the Westmoreland case, I believe it was Westmoreland, it was a case of mine where I went to great pains to preserve a record for the accused and did him too much of a favor by proceeding to trial after denying a motion to dismiss, that was an error, and there was a reversal.

I believe this is an appealable decision.

MR. SIMPSON: The thing that concerned me about trying to preserve is that I don't have any substantive authority for that position, but I do for the position that it is appealable at this point, and I don't want to lose that.

THE COURT: Well, you are not losing it. You could go to trial and preserve it just as you would a ruling, an adverse ruling made on a demurrer in a proceeding at law, but if you were to take an appeal, this is to say if you were to file an order for appeal here and now, which is what you indicated you are about to do, I doubt that I could proceed with the trial, Mr. Bours.

I think this is a final order.

MR. BOURS [Assistant State's Attorney]: Your Honor, this is a matter that concerned the State.

As a matter of fact, I will confess I asked Your Honor to reserve the ruling for that reason.

THE COURT: You did?

MR. BOURS: I asked—

THE COURT: I said I could reconsider it, but—

MR. BOURS: I don't think at this point that it is necessary, but I would ask that the Court consider the case of Raimondi versus State cited at 8 Md. App. Reports at Page 468, * * *."

The Assistant State's Attorney urged that under *Raimondi* the denial of the motion to dismiss was interlocutory. The court said:

"Here there has been no appeal, so it seems to me I could rescind the order, the ruling made, and reserve ruling on it because I said in the course of the opinion that I could always reconsider, and, perhaps, grant the motion, if I agree with Mr. Simpson's arguments on the law later on, or, in the alternative, as in the Raimondi case, proceed to — I think the Raimondi case is a little different.

The Raimondi case, the point made there was — well, I am going to adopt the former course.

I will reserve ruling on the motion, but I have indicated I intend to grant it [sic], although I could change my mind, as I have indicated, because I don't think this trial should be delayed.

You have indicated an intention to appeal, so I will reconsider your motion to dismiss and reserve ruling on it.

MR. SIMPSON: I would say this, if Your Honor pleases: as I said, Your Honor, when I came just a moment ago, I had not anticipated the Court's ruling, and I have now sat here in handwriting and written out the appeal.

I think that the Court would be in effect depriving the —

THE COURT: No. I think you could take your appeal, in any event, but I could proceed with the trial by reserving the ruling, as in effect I said I

could always reconsider this if I were persuaded I was wrong in not dismissing the information at the time you filed it, but I don't think as a matter of law, not as a matter of fact but as a matter of law, I could possibly dismiss the information at this time.

Very good. I will reserve ruling.

MR. SIMPSON: May I note an objection on that?

THE COURT: You have an objection to it and an exception.

MR. BOURS: May we proceed with an arraignment of the Defendant, Your Honor?

THE COURT: I think we should. Call the case.

THE CLERK: Criminals Number 12,157, the State of Maryland versus Leonard Saul Blondes.

MR. SIMPSON: If Your Honor pleases, I just want to file this. It is rather rough looking, but—

THE COURT: I will make a note on here. This is filed.

I will make a note that before the order was filed, the Court reserved ruling on the motion to dismiss the information, and, therefore, can not entertain — therefore, the appeal is premature.

That is my note. You have your exception.

MR. SIMPSON: Yes, but my recollection of it was that Your Honor had denied the motion and had said that you thought it was the final order and appealable, and thereafter at the State's request changed it to reserving it.

That is my best recollection.

MR. BOURS: I would like to indicate that I—

MR. SIMPSON: The record would speak for itself.

MR. BOURS: Since you are making statements about the record, I would like the record to reflect I didn't ask Your Honor to change his ruling but simply indicated that that had been my purpose in asking the Court to reserve its ruling originally, and that the decision of the Court is, of course, the

decision of the Court, and I cannot make the Court—

THE COURT: Is there any reason why I could not reserve ruling at this time and revoke the motion for appeal based on the Ramandi [Raimondi] case?

The Court will revoke the motion for appeal based on Ramandi [Raimondi]. Very well. Call the case for arraignment."

After Blondes was arraigned and elected a court trial,[5] the State then requested the luncheon recess be called to give it opportunity to further consider the right of the accused to an immediate appeal from the denial of the motion to dismiss the information. The court recessed. When the court convened after the recess, the transcript reads:

"MR. BOURS: If the Court please, Mr. Simpson suggested just prior to the recess a case known as Brown versus State in 2 Md. App. Reports at Page 388, the apparent holding of which is that there is an absolute right to an immediate appeal where the Court denies a motion based upon a claim of violation of double jeopardy provisions of the United States Constitution.

I think very precisely speaking the questions that are raised at this point in the proceedings are, number one, whether the Court has, in fact, made a final denial of the motion to dismiss the information, which was admittedly on the grounds of alleged double jeopardy, and if not, then I believe that the Court would be within its rights to reserve ruling at this time and make a ruling at some time later in the proceedings and before judgment.

However, the State recognizes that there is at least some possibility that after a trial on this case,

---

5. Blondes stood mute, refusing to plead. The court entered a plea of not guilty pursuant to Rule 721. Then Blondes, objecting to going to trial said that if he had to go to trial it would be a trial by the court. Upon personal inquiry of Blondes the court was satisfied that the waiver of a jury trial was freely and intelligently made.

provided there were a conviction, that on appeal the Defendant might wish to not only litigate the issue of whether the Court denied his motion to dismiss the information but might also wish to litigate or go behind the Court's ruling in its most recent ruling reserving a decision on that question and make the contention that the Court reserved its ruling, reconsidered its denial and reserved its ruling solely to prevent the Defendant from appealing, and although I am not sure this is an appropriate way for me to state this, I would respectfully request that if that is not the case, if the Court note that for the record that there is no attempt being made here to prevent the Defendant from appealing a final ruling on his motion but that instead it is the Court's desire not to finally rule on the matter because of the merits of the motion, not to finally rule on the matter and to reserve its ruling, I think if that is made clear on the record, there is no chance for error in these proceedings.

THE COURT: Well, my understanding of what has transpired is this: We spent the greater portion of the morning hearing argument on the motion to dismiss the criminal information.

I was apparently so fascinated by it that I didn't think of the constitutional implications of any decision made but it was not my intention then, and I think I indicated that I would reconsider at any time during the trial the matter of the motion to dismiss the criminal information on the grounds of double jeopardy or on any other ground touching on the validity of the motion, or any constitutional question that might be raised in it.

I did unfortunately announce, and I will not repudiate anything that has actually happened, that I was disposed to and did deny the motion to dismiss the information saying that I would reconsider at any time during the trial.

I should have said that I will reserve the ruling on it at that time, a matter that was preserved, or recognized by our Court of Special Appeals in the past because I know and I promptly said that this is a matter of constitutional right and it is appealable. There is no question about that.

There followed a recess, and after the recess Mr. Simpson announced that he was going to take an appeal on behalf of the Defendant.

I then said, and I think quite promptly, under those conditions I rescinded the order made and would hold the matter under advisement.

Meanwhile Mr. Simpson was writing something as I was announcing that ruling, and I saw him writing, I didn't know what he was writing, but he promptly said: I am writing up an order for appeal.

I said: I have already rescinded the order because it is not my intention to delay this trial, and I can always reconsider, as I said I would, and I hold the matter under advisement. I will reserve ruling on it.

Thereafter the order for appeal was filed."

There followed lengthy discussion in which counsel and the court participated and which ended as follows:

THE COURT: The Court of Appeals, or certainly the Court of Special Appeals has approved the practice when a case is specially set, as this one is, we know that, that whereby the Court may reserve ruling on any such motion, in any event, and proceed with the trial, and then make the ruling at the termination of the case.

If the ruling is to grant the motion, that is the end of the case.

If the ruling is that the Defendant is not guilty as a matter of fact, then it makes no difference what the ruling is, but the Judge still has to rule on that motion, and I will rule on it at the proper time and in such a fashion as not to foreclose your right of

appeal; and I think this Court continues to have jurisdiction, as I have rescinded the order denying the motion to dismiss, and did it before the order for appeal was actually filed, Mr. Simpson, when I learned that you contemplated an appeal.

You have waived nothing, and I think the Court has jurisdiction.

Now let's proceed.

Do you agree with that Mr. Bours?

MR. BOURS: Yes, Your Honor, I do.

THE COURT: I know Mr. Simpson doesn't agree.

MR. SIMPSON: No, it's not—well, we don't have a time stamp. I was writing. The Court was talking.

Now, I am not going to make any great point over the fact, and I didn't do it for the purpose of delaying anything.

I came here to try the case.

THE COURT: Let's try it. Very good."

The trial proceeded. On 9 May, at the close of all the evidence and after argument of counsel, the court acted on the motion to dismiss the information:

"The Court upon receiving the Motion to Dismiss the Indictment heard argument and announced that it would deny the motion at that time but would reconsider later on as the trial progressed.

Shortly thereafter defense counsel announced that he intended to take an appeal from that decision, as it was a final decision, of which I concurred, but I then announced that I would rescind the ruling and reserve ruling on the Motion to Dismiss.

Defense counsel, however, filed an order for appeal but said with commendable candor that it was not his intention to delay the trial and he did not wish to do so.

However, he felt it necessary to file the appeal to avoid waiving any right which his client might have.

> The Court continued to reserve ruling and I have reserved ruling right up to this time, and I do not consider that any waiver has been effected adverse to the Defendant or to the State, for that matter. The motion is very much alive at this time, but I am of the same opinion as I was then. That is to say that I believe it should be dismissed, and under the authorities of United States v. Tateo in 377 U.S. 463 and various other cases which were considered at the time, I am disposed to announce the same ruling at the appropriate time."

The court then considered the question of the innocence or guilt of Blondes. After discussing the law in point and the evidence adduced, it announced the following rulings:

> "First, the motion to dismiss the information is overruled.
> Secondly, I find the Defendant guilty under both the first and second counts."

On 11 June Blondes was fined $2500 and costs.[6] He appealed.

The four questions Blondes presents on appeal involve the information on which he was tried.

## I

*"Was the appellant twice put in jeopardy in violation of the Fifth Amendment to the Constitution of the United States when the lower court required that he stand trial on charges in an Information after the State had entered a nolle prosequi to identical charges in an existing Indictment on which trial had already begun?"*

The question centers on the taking of a deposition by the State of one of its witnesses, Revelle Stuart Armiger, on 1 May 1973. The State moved on 30 April 1973 to take the deposition, alleging that the witness was material to a

---

6. The transcript of the penalty stage of the proceedings reads as to the sentence: "The Court will impose a fine of $2500.00 and costs in each of these two cases, to run consecutively one with another, total fine of $2500.00." As the court made clear that the total fine was $2500.00, it is patent that the intention was that the fines be concurrent, not consecutive.

presentation of the State's case and that he might be prevented from attending the trial by absence from Maryland. Rule 727. After a hearing, the court ordered that Blondes and his attorney appear the next day at the office of the State's Attorney for Montgomery County for the taking of the deposition.[7] Blondes and his counsel appeared on 1 May as ordered. Before the witness was sworn defense counsel requested the State to inform him "which of the charging documents we are taking this deposition pursuant to, namely, the indictment, returned on May 24, 1971, or the information filed on April 4, 1973 * * *." The State refused to answer the question, stating: "This is a deposition of the witness." Defense counsel made clear his position: "Let the record show on the question of double jeopardy, I raise that again and state that this is a step in the prosecution of the Defendant, Leonard Saul Blondes, and we object to the proceedings. * * * Also, we demand that the State elect under which charging document the State is proceeding." The witness deposed. At the conclusion of his testimony defense counsel renewed his demand that he be advised "what document or charging document this deposition is or will be offered in reference to. Whether it is the indictment * * * or the information." The Assistant State's Attorney stated his view for the record: "This is a deposition conducted pursuant to Court Order and pursuant to the provisions of the Maryland Rules and I am not required to say at this time or at this juncture what its use will be. If nothing else, it is a matter for the Court to decide." Defense counsel persisted: "When will the accused be advised of the nature of the procedures under which he will be tried?" The prosecutor replied: "I will just state that the State will offer this deposition, if it is proper to do so, at any trial on either charging document that may occur. So that the accused should be informed that regardless of the nature of the charging document or its title, form number or whatever, that this deposition will be offered if proper to do so, in

---

7. In the motion the State averred that defense counsel, although not consenting to the taking of the deposition, waived the notice required by Rule 727 c.

connection with any trial that may occur on said charging document that is related, of course, to the facts involved." The prosecutor spread on the record that "I have not heretofore and do not now personally excuse the witness, Mr. Armiger, from attendance at the trial."

On the day set for trial, the State informed the court that Armiger was in California. It sought a ruling from the court whether it could use Armiger's deposition "in the trial that is about to commence some time later this morning. Of course, the case has not been called for trial as yet, since there are some pending motions, I believe, the Defendant wished to have disposed of prior to trial." The court asked the prosecutor: "Don't you think this has to be considered * * * when and if there is a trial, at the time of trial when the deposition is proffered in evidence, or do you want to have a preliminary hearing now to conserve the time of Mr. Miller [James Robert Miller, Esq., Armiger's counsel]." The prosecutor replied: "That was part of my intention, because Mr. Miller has a meeting beginning at 11:45 this morning. He is the President of our Local Bar Association." The court asked defense counsel if he objected to the deposition and defense counsel said that he did. The court then inquired if defense counsel had "any objection to proceeding a little bit out of order as to hearing Mr. Miller as to the whereabouts of his client as to conserve the time of Mr. Miller only?" Defense counsel replied: "No, sir," and the court said: "Very well. We will proceed on that basis to conserve counsel's time." Mr. Miller was examined as to the availability of Armiger. Thereupon the State offered in evidence the transcript of the proceedings of 30 April pertaining to the issue whether the deposition of Armiger should be taken. Defense counsel objected: "First, I don't know in what proceedings he is offering this. I endeavored to find that out at the time of the taking of the deposition and prior thereto." The State thought the deposition was as to both the indictment and information or as to either one, depending upon which case is tried. "If the information is tried, we would seek to offer the deposition during the trial of the information. If for some reason the indictment were to be tried, we would offer the deposition as to the indictment.

Both the charges are the same." Defense counsel, referring to the proceedings of 4 April said it was his understanding that the State had abandoned the indictment. The prosecutor explained that the issue as to what pleading the deposition was taken was subsidiary to whether the deposition would be abandoned. "* * * I would suggest that we should proceed to trial on the information, but I don't believe the admissibility of the deposition is dependent upon which charging document the Court later tries, if any." The court ruled: "I am disposed to agree with that. I think when you come to offer the deposition in evidence, it would be offered in evidence in whatever case is called for trial, and if that happens to be the information, it is offered in that case." The court then admitted the transcript of the proceeding of 30 April in evidence as going to the reason why the deposition was taken. Defense counsel urged again that he be advised in what case the State was going to proceed. The court elicited from the State that it intended to call the criminal information for trial and that it would offer the deposition "in that case and not in the indictment". Defense counsel said: "If that is the State's election, I would now like him to dispose of the indictment." The court observed that the State had not offered any evidence. "I think the first thing to do now that we have made some preliminary consideration of the problem as to the admissibility of the deposition, I haven't made a ruling on its admissibility because it hasn't as yet been offered, but I think the next order of business is your motion to dismiss [the information]." [8] When the deposition of Armiger was offered by the State during the guilt stage of the trial, it was admitted in evidence by stipulation preserving Blondes's "objections to the taking of said deposition on the ground that it constituted a step in the prosecution and double jeopardy is preserved, but objection will be made only to such questions as are considered objectionable for other reasons in the same fashion as if the witness were on the stand."

---

8. As pointed out above, the court eventually reserved its ruling on the motion to dismiss the information until trial on the merits and denied it at the end of the case. Before trial the State entered a *nolle prosequi* to the remaining first and second counts of the indictment.

The double jeopardy clause of the Fifth Amendment to the Constitution of the United States, providing "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb", is applicable to the States through the Fourteenth Amendment. *Benton v. Maryland*, 395 U. S. 784, 787; *Baker v. State*, 15 Md. App. 73, 76.[9] It is axiomatic that a person cannot be twice put in jeopardy for an offense until he has been once put in jeopardy for that offense. Necessary to any consideration of the constitutional clause, therefore, is a determination when jeopardy attaches. At the onset we note that the first trial at which Blondes was convicted has no bearing on the double jeopardy question before us. The law is clear that when an accused is convicted of a crime and the conviction is reversed on appeal, the constitutional double jeopardy clause does not preclude a retrial on the charge. *Gray v. State*, 254 Md. 385; *Booth v. State*, 16 Md. App. 524. What Blondes argues is that the new trial, mandated by this Court on reversal of the judgment entered at the first trial, commenced before the State entered the *nolle prosequi* without his consent to the two counts remaining in the indictment. He then invokes the rule that a *nolle prosequi* entered after trial has begun, without the consent of the defendant, operates as an acquittal. *Greathouse v. State*, 5 Md. App. 675, 689; *Boone v. State*, 3 Md. App. 11, 25-26. "[I]t has long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy, and even when 'not followed by any judgment is a bar to a subsequent prosecution for the same offense.' " *Green v. United States*, 355 U. S. 184, 188, quoting *United States v. Ball*, 163 U. S. 662, 671. See *State v. Adams*, 196 Md. 341, 348; *State v. Shields*, 49 Md. 301, 303. Thus, he reasons, he could not thereafter be tried on the information because it charged the same two offenses of which he had been acquitted under the indictment, for to try him thereon would put him twice in jeopardy. He concludes that the denial of his motion to dismiss the information was error.

---

**9.** The prohibition is not against being twice punished but against being twice put in jeopardy. *Price v. Georgia*, 398 U. S. 323; *Gaskins v. State*, 10 Md. App. 666.

The crucial question is whether, in the context of jeopardy attaching, the new trial commenced, before the entry, without Blondes's consent, of the *nolle prosequi* of the two counts remaining in the indictment.

The generalization is that a person is in legal jeopardy when he is placed on trial before a court of competent jurisdiction on an indictment or information or other authorized charging document which is sufficient in form and substance to sustain a conviction. *Brown v. State*, 2 Md. App. 388, 396. We have said that the constitutional policies underpinning the Fifth Amendment's guarantee against double jeopardy are implicated when an accused in a criminal proceeding is placed on trial before the trier of fact, whether the trier be a jury or a judge, *Jones v. State*, 17 Md. App. 504, 506, that is, when trial commences, *Baker v. State*, *supra*, at 78.

With respect to a jury trial, the law is clear as to the time when jeopardy attaches. "The accused is ordinarily said to be placed on trial when the jurors have been sworn in his case." Hochheimer, *Criminal Law*, 1st ed., § 71. "When the jury are assembled in the box and sworn, the trial commences * * *." *Id.*, § 236, citing 1 Chitty Cr. L. 553. "The actual trial of a cause is said to commence, when the panel of twelve jurors has been completed by being duly sworn." *Id.*, § 240. See 3 *Wharton's Criminal Evidence*, (13th ed.), § 655, p. 399, and cases cited; 1 *Wharton's Criminal Law and Procedure*, (Anderson), § 138, pp. 308-309, and cases cited. See also *Green v. United States*, *supra; Downum v. United States*, 372 U. S. 734; *Wade v. Hunter*, 336 U. S. 684.

With respect to a non-jury trial, the law is more equivocal as to the time when jeopardy attaches. In addition to the imprecise standard of "the commencement of trial", the cases refer to "the swearing of the first witness" or "the introduction of testimony", or "the hearing of evidence". In some cases these three phrases seem to be treated as synonymous. In others there appears to be an effort to distinguish them. When the witness takes the oath, he is sworn; when he gives his name and address, testimony is introduced; when he testifies on the merits, evidence is

heard. The majority of the cases couch the rule in terms of the hearing of evidence. *Annotation — When Does Jeopardy Attach in a Nonjury Trial?*, 49 A.L.R. 1039. See 3 *Wharton's Criminal Evidence* (13th ed.), § 655, 1972-1974 Annual Supplement, pp. 29-30, and cases cited; 1 *Wharton's Criminal Law and Procedure* (Anderson), § 138, pp. 309-310, and cases cited; 1 *Modern Constitutional Law*, Antieau (1969), § 5.21,' p. 305; *Criminal Law*, Dangel, § 189, p. 355; *Note, Double Jeopardy: In the Interest of Public Justice*, 49 N. C. L. Rev. 782 (1971); *Comment, When Does Jeopardy Attach*, 70 Dickinson L. Rev. 390 (1966); *Note, Double Jeopardy: The Reprosecution Problem*, 77 Harvard L. Rev. 1272 (1964).[10] Whether there be a real distinction in the various wordings of the rule or not, we think that the rule is best expressed, as to a non-jury trial, in terms of the swearing of the first witness. This, it appears to us, is least subject to uncertainty, and requires little interpretation or construction. Under such terms, the time jeopardy attaches begins as mechanically as when the jury is sworn. Therefore, we adopt as the rule with respect to a non-jury trial, that the indictment, information or charging document having been brought to trial on the general issue, jeopardy attaches when the first witness is sworn. We point out that there are patent exceptions arising from the conduct of the trial. We emphasize that jeopardy does not attach in any event until after trial on the merits of the substantive offense has begun. Thus, there is no question of an accused being put in jeopardy by hearings preliminary to trial on the general issue, as, for example, on motion to dismiss the indictment, or to suppress evidence, or to change the venue, or for discovery. We can conceive, however, that the State's case on the general issue may conclude without a witness being sworn, the evidence being provided by stipulation as to what the witnesses would testify to if they appeared, or by an agreed statement of facts. In such circumstance, jeopardy

---

**10.** The Model Penal Code suggests that jeopardy attach in all cases upon the swearing of the first witness, evidencing the belief that there should be no distinction between jury and nonjury trials. *Model Penal Code,* § 1.08 (4) (Proposed Official Draft 1962); *Model Penal Code,* § 1.09, Comment. (Tent. Draft No. 5, 1956).

attaches upon the offering of such evidence. Or the State may initiate its case by the introduction into evidence of a search warrant or other tangible evidence before calling a witness. We think it apparent that, in such case, jeopardy attaches upon the receipt of such evidence.

Applying the rule that jeopardy does not attach until the first witness is sworn to the bench trial of Blondes, we have no difficulty whatsoever in determining that he was first put in jeopardy on 7 May 1973 upon the swearing of C. Edward Goldberg, the first witness called by the State on the general issue. This followed the State's opening statement (the defense reserved its statement), which was immediately preceded by the sequestration of witnesses upon motion by the defense. As we have indicated, Blondes had shortly before been arraigned, a plea of not guilty had been entered by direction of the court, and he had waived trial by jury. We find that theretofore he had not been put to trial under our mandate on appeal from the original trial, either on the indictment or the information. We do not agree that the retrial began with the taking of the deposition of Armiger. At the time of the taking of the deposition, trial on the general issue had not commenced. The purpose of a deposition is to perpetuate the testimony of a witness, *Collins v. State,* 12 Md. App. 239, 242, n. 2. It then is admissible at the trial only upon meeting the conditions spelled out in Rule 727 e, and an objection to receiving it or a part thereof in evidence may be made as provided by Rule 413 b. See Rule 727 f. The taking of Armiger's deposition was a matter preliminary to the trial, and it is clear that the deposition was not offered and received in evidence until well into the trial after other evidence had been adduced by the State. In no manner could the swearing of Armiger for the purpose of deposing him be deemed to be the time when jeopardy first attached to Blondes.

By the same token, the taking of testimony from James R. Miller, Esq., Armiger's counsel, was nowise within the ambit of the rule concerning the attachment of jeopardy. His testimony was received in a proceeding preliminary to trial, with the expressed agreement of the defense, simply to

establish a foundation for the admission of Armiger's deposition in the event it was proffered at trial on the merits. Miller's testimony did not constitute or go to the issue of Blondes's guilt or innocence of the charges; it dealt only with the availability of Armiger to appear at the trial and concerned the admissibility of the deposition if proffered at the trial. Even if it were admissible on the basis of Armiger's unavailability, if proffered at the trial, Blondes could object to the admission of it or any part of it for any reason which would require exclusion if the witness were then present and testifying. Rule 413 b.

Blondes also suggests that the indication by the State that it had "abandoned" the indictment by filing the information acted as an acquittal of the charges. Even if it be considered that the State "abandoned" the indictment, and even if such abandonment be deemed the equivalent of a *nolle prosequi*, it was done, in any event, as we have pointed out, before jeopardy attached. Thus the subsequent trial under the information did not place him twice in jeopardy.

*Friend v. State*, 175 Md. 352 and *Bustamante v. People*, 136 Colo. 362, 317 P. 2d 885 (1957), on which Blondes relies, do not support his position. Neither is factually apposite. In *Friend* the appeal process from a conviction had not been concluded when another indictment charging the same offense was returned. In *Bustamante* an appeal had been noted and no decision rendered when prosecution was begun charging a crime incorporated in the first proceeding. In such circumstances, not present in the instant case, it is clear that the subsequent proceedings placed the accused twice in jeopardy.

We conclude that the entry of the *nolle prosequi* to the indictment did not act as an acquittal of the offenses, that jeopardy had not attached before the court began to receive evidence by way of Goldberg's testimony, and that Blondes, not having been in jeopardy, was not twice put in jeopardy by the retrial. We hold that the court below did not err in denying the motion to dismiss the information.

II

*"Was the appellant's trial on the charges in the Information a nullity after the appellant had noted an appeal from the lower court's denial of his Motion to Dismiss the Information on the grounds of double jeopardy?"*

As pointed out in our aperçu of the events prior to trial, a trial date of 10 April 1973 had been set. On 5 April the case was removed from the trial calendar for 10 April and specially assigned for 7 May. The motion to dismiss the information was heard preliminarily on the day of trial. It is clear that the motion, at the discretion of the trial court, could be deferred for determination at trial of the general issue. Rule 725 d. There was no indication by the defense when the motion was brought before the court, or at any time during the extensive argument concerning it, that the case would not proceed to trial on the merits as specially set if the motion were denied. After the court ruled, denying the motion, there was a short recess. When court reconvened, defense counsel reopened the matter of the motion, pressing a point made in the written motion, but not argued, and then raised another point going to the motion which was considered by the court. The court, patently under the impression that the case would now proceed on the merits, made inquiry about the discovery demands being satisfied. It was not until that point that Blondes first made known an intention to appeal from the denial of the motion. We think it a fair appraisal from what defense counsel said that he wanted assurance that appellate review of the denial of the motion was preserved. It was, of course, preserved upon conviction, the right not being lost in the absence of an immediate appeal from the denial. And we note that defense counsel later said: "Now, I am not going to make any great point over the fact, and I didn't do it [attempt to appeal] for the purpose of delaying anything. I came here to try the case." The court's response was: "Let's try it. Very good."

The short answer, however, to the claim that the court below lost jurisdiction to try the case when Blondes indicated a desire to appeal from the denial of the motion, is that the notice of appeal had not been filed with the clerk of

the lower court as prescribed by Rule 1011 a. Until this was done, the trial court was not precluded from changing his ruling and deferring determination for trial on the general issue. No order of appeal from the judgment on the motion was filed as required. It is correct that in *Harris v. State*, 6 Md. App. 7, we said at 18: "It is possible under some circumstances that actions of the lower court or the State may have so prevented the filing of an order of appeal as to constitute a denial of due process or equal protection of the law * * *". But we cannot say, in the unique factual posture here existent, that this is such a case. In the light of all the circumstances, we believe that the court did not abuse its discretion in reconsidering its ruling and deferring determination of the motion. We hold that the court below had jurisdiction to try the cause.[11]

### III

*"Was the appellant's trial a nullity where the State's Attorney prosecuted him on an Information filed under Maryland Rule 708 after Indictment by the Grand Jury and without having first obtained the waiver of the appellant pursuant to Maryland Rule 709 and where the Information was filed while the Indictment containing identical charges was still pending for retrial?"*

It is the declared policy of Maryland that "Whenever a

---

11. The record before us includes the following, handwritten on a page from a yellow, legal size pad:

"In the Circuit Court for Montgomery County, Maryland
State of Maryland
    vs.

Leonard Saul Blondes          Criminal
    Defendant           No. 12157
Mr. Howard M. Smith, Clerk.

You will please note an appeal to the Court of Special Appeals of Maryland from the Court's denial of Defendant's motion to dismiss the Information in the above case.

               (Signed) Joseph B. Simpson, Jr.
                    Atty for Def't."

There is written thereon over the initials of the trial judge and the date 7 May 1973: "Before above Order was filed the court reserved ruling on Motion to Dismiss Information. Court denies appeal."

person is accused of an indictable criminal offense under the laws of this State, he shall have the right to a grand jury * * *." Code, Art. 51, § 1.[12] However, it was provided by Maryland Rule 708: "A person charged with the commission of a misdemeanor, before indictment by the grand jury, may be prosecuted upon an information filed by the State's Attorney. A person charged with the commission of a felony may not be presented upon an information except pursuant to Rule 709 (Immediate Trial)." Rule 709 authorized an accused to seek by petition an immediate trial upon waiving right to action by the grand jury, § a, and prescribed that upon such petition the State's Attorney shall file an information, § b, whereupon the accused shall be tried within such reasonable time as to accord him a speedy trial, § c.[13]

Blondes interprets the statute and the rules to preclude absolutely the State's Attorney from prosecuting him by way of information with respect to the misdemeanors of which he was charged because the grand jury had returned an indictment on the charges. In other words, he believes that the phrase "before indictment" operates upon indictment to vitiate the authority of the State's Attorney, as bestowed by Rule 708, to prosecute upon an information. We do not see it that way. We first observe that the

---

**12.** This was the law at the time Blondes was accused and at the time the information was filed against him. Chapter 840, Acts 1973, effective 1 July 1973, eliminated "is" following "Whenever a person" and substituted "is presented to a grand jury, such grand jury shall be" [there follow provisions for the selection of the grand jury] for "he shall have the right to a grand jury.".

**13.** By amendment 1 October 1973 the second sentence of Rule 708 was rewritten: "A person charged with the commission of a felony may be prosecuted upon an information filed by the State's Attorney after a preliminary hearing has been held and probable cause to hold the accused has been found or after such preliminary hearing has been waived."

Section a of Rule 709 as amended 1 October 1973 reads: "An accused may file with the clerk a petition signed by him setting forth that there is a criminal charge pending against him, that he desires to waive any right he may have to action by the grand jury, or that a jury trial was prayed in the District Court, or that the trial in the District Court resulted in conviction and appeal, as the case may be, and that he seeks an immediate trial."

The patent purpose of the amendments was to permit the State's Attorney to proceed by way of information as to felonies (with the designated provisos) as well as to misdemeanors.

740

statutory right of an accused to have the right to a grand jury was tempered by Rules 708, 709 and 710 (Summons for Witness in Aid of Information).[14] It is firmly established that under Rule 708 a person charged with the commission of a misdemeanor may be prosecuted upon an information without his request or agreement, consent or waiver. See *Walters v. State,* 242 Md. 235; *Landaker v. State,* 234 Md. 489. Although Rule 708 contemplates as a customary procedure the use of the information before indictment, we do not take the phrase "before indictment" to mean that all authority in the State's Attorney to proceed by way of information is irrevocably lost upon indictment. The purpose of the provisions relating to the information was, as to felonies, to afford an accused the benefit of prompt trial at his option without awaiting a new term of court or the impaneling of a grand jury to indict him, and, as to misdemeanors, to effect an early trial upon the initiative of the State, without the necessity of solicitation by the accused.[15] See *Brinkley v. State,* 224 Md. 391; *Heath v. State,* 198 Md. 455. Thus the phrase "before indictment by the grand jury" is merely descriptive of the usual procedure, making clear that the Rule is a means of charging formally a person other than through the grand jury. It does not operate to divest a State's Attorney of all authority to

---

14. These rules and Rule 714, dealing with amendments to indictments and informations, contained provisions similar to those of Code, Art. 27, § 592, which was repealed by Acts 1963, ch. 558, § 1. Cases construing former Art. 27, § 592 are in measure authority for construction of Rule 708-710 and 714.

15. At the common law "* * * these informations (of every kind) are confined by the constitutional law to mere misdemeanors only: for, wherever any 'felonious' offense is charged, the same requires that the accusation be warranted by the oath of twelve men, before the party shall be put to answer it." 4 Blackstone, *Commentaries on the Law of England,* 310. The Constitution of Maryland contains no provision requiring indictment by a grand jury. The provisions of Amendment V to the Constitution of the United States, that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; * * *" are not applicable to the states. Thus the policy declared in Code, Art. 51, § 1, reflected the common law and has no constitutional basis other than the entitlement of the "Inhabitants of Maryland" to the common law of England expressed in Article 5 of the Declaration of Rights to the Constitution of Maryland.

proceed by way of information upon the return of an indictment. The Court of Appeals in *Martel v. State*, 221 Md. 294, found no merit in an argument that "because the request for trial by information was not filed until after the indictment had been brought the information could not be used." It said, at 301: "Although the statute, Code (1957), Art. 27, Sec. 592,[16] contemplates as a customary procedure the use of the information before indictment, an accused may avail himself of its remedial procedures after the indictment has been returned and subsequently stetted." By the same token the State may have reason it deems sufficient to avail itself of those procedures. A subsequent indictment is not rendered invalid merely by the existence of a prior indictment for the same or a related offense, *Barnes v. State*, 1 Md. App. 123, and here the subsequent information was not rendered invalid by the prior indictment. Further, an accused has no right *per se* to be tried on a particular charging document. *Greathouse v. State, supra*, at 685. See *Kable v. State*, 17 Md. App. 16; *Fabian v. State*, 3 Md. App. 270.

Blondes also suggests that Rule 708, as in effect when the information was filed against him, was not applicable to misdemeanors punished by confinement in the penitentiary.[17] He claims as to them, that, like felonies, prosecution was only permissible when the accused had requested the procedure under Rule 709. He points out that with respect to limitations of actions, felonies and penitentiary misdemeanors are treated the same, Code, Art. 57, Sec. 11. We see nothing in Rule 708, when read alone or with Rule 709, which indicates that all misdemeanors are not within its ambit, or, in other words, that penitentiary misdemeanors are excepted. We held in *Kable v. State, supra*, at 25-27, that the State could proceed by way of information to prosecute a person accused of bribery. We adhere to that holding.

We hold, in the circumstances, that the prosecution of

---

16. See note 14, *supra.*
17. The misdemeanor of bribery is so punished. Code, Art. 27, Sec. 23.

Blondes was not rendered a nullity because he did not waive indictment or because the information under which he was prosecuted was obtained on the initiative of the State and filed after indictment.

IV

*"The State was precluded from trying appellant on an Information when the crime with which he was charged is an infamous crime and the Information was identical to an Indictment previously obtained by the State upon evidence impinging on the legislative privilege. "*

As we have indicated, "there is no provision of the Maryland Constitution requiring an indictment in any case. Article 21 of the Declaration of Rights merely requires that an accused 'hath a right to be informed of the accusation against him; to have a copy of the Indictment, or Charge in due time (if required) to prepare for his defense'." *State, ex rel Butler v. Warden,* 195 Md. 713, 714. We observed in *Fabian v. State, supra,* at 283: "Although the Fifth Amendment to the Constitution of the United States provides in part that '[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury * * *,' this provision has not yet been held to flow to the states through the Fourteenth Amendment." Thus, Blondes was not constitutionally entitled to indictment as a requisite to prosecution, and, as we have further indicated, he was not so entitled by statute.

The premise of this contention is that the indictment was subject to dismissal because it was based "upon evidence impinging on the legislative privilege." Therefore, Blondes reasons, the indictment being dismissible, the information, containing charges identical to those in the indictment, was also dismissible. The short of it is, however, that the information was valid on its face, and this was enough to call for trial of the charges on the merits. Neither the indictment nor the information was open to challenge on the ground that there was incompetent evidence before the grand jury.

In *Costello v. United States*, 350 U. S. 359, the Supreme Court determined that indictments in federal prosecutions were not open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury.[18] The Court said at 363:

> "If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."

It rejected the suggestion that the Court should exercise its power to supervise the administration of justice in federal courts and establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence. It stated, at 364:

> "No persuasive reasons are advanced for establishing such a rule. It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however,

---

**18.** The precise question was "May a defendant be required to stand trial and a conviction be sustained where only hearsay evidence was presented to the grand jury which indicted him?"

to a rule which would result in interminable delay
but add nothing to the assurance of a fair trial." [19]

See *Holt v. United States*, 218 U. S. 245. In *United States v.
Blue*, 384 U. S. 251, the Court assumed that the Government
acquired incriminating evidence in violation of the Fifth
Amendment guarantee against self-incrimination. It pointed

---

**19.** The Court gave a brief history of the grand jury system:

"The Fifth Amendment provides that federal prosecutions for
capital or otherwise infamous crimes must be instituted by
presentments or indictments of grand juries. But neither the Fifth
Amendment nor any other constitutional provision prescribes the
kind of evidence upon which grand juries must act. The grand jury
is an English institution, brought to this country by the early
colonists and incorporated in the Constitution by the Founders.
There is every reason to believe that our constitutional grand jury
was intended to operate substantially like its English progenitor.
The basic purpose of the English grand jury was to provide a fair
method for instituting criminal proceedings against persons
believed to have committed crimes. Grand jurors were selected
from the body of the people and their work was not hampered by
rigid procedural or evidential rules. In fact, grand jurors could act
on their own knowledge and were free to make their presentments
or indictments on such information as they deemed satisfactory.
Despite its broad power to institute criminal proceedings the grand
jury grew in popular favor with the years. It acquired an
independence in England free from control by the Crown or judges.
Its adoption in our Constitution as the sole method for preferring
charges in serious criminal cases shows the high place it held as an
instrument of justice. And in this country as in England of old the
grand jury has convened as a body of laymen, free from technical
rules, acting in secret, pledged to indict no one because of prejudice
and to free no one because of special favor. As late as 1927 an
English historian could say that English grand juries were still
free to act on their own knowledge if they pleased to do so. And in
1852 Mr. Justice Nelson on circuit could say 'No case has been
cited, nor have we been able to find any, furnishing an authority
for looking into and revising the judgment of the grand jury upon
the evidence, for the purpose of determining whether or not the
finding was founded upon sufficient proof . . . .' *United States v.
Reed*, 27 Fed. Cas.727, 738."

It noted, footnote 6 at 363:

"As to the development of the grand jury as an institution here
and in England, see *Hale v. Henkel*, 201 U. S. 43, 59; *Blair v. United
States*, 250 U. S. 273, 282; *McGrain v. Daugherty*, 273 U. S. 135,
157; *United States v. Johnson*, 319 U.S. 503; 4 Blackstone
Commentaries 301 *et seq.*; 1 Pollock and Maitland, History of
English Law (1895), 130; 1 Holdsworth, History of English Law
(1927), 312-323; Morse, A survey of the Grand Jury System, 10
Ore.L.Rev. 101, 217, 295."

See *United States v. Dionisio*, 410 U. S. 1.

out, note 3 at 255 that "* * * our precedents indicate this would not be a basis for abating the prosecution pending a new indictment, let alone barring it altogether," citing *Costello, Lawn v. United States,* 355 U. S. 339; 8 Wigmore, Evidence § 2184 a, at 40 (McNaughton rev. 1961). It found that the remedy of the accused was under the exclusionary rule, suppressing the evidence at trial. "Our numerous precedents ordering the exclusion of such illegally obtained evidence assumed implicitly that the remedy does not extend to barring the prosecution altogether. So drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book." 384 U. S. at 255.

It is firmly established that the rule that incompetent or inadequate evidence before the grand jury is no ground for dismissing an indictment is applicable to prosecutions in this State. The Court of Appeals declared flatly in *Pick v. State,* 143 Md. 192, 196: "The law is well settled, that the competency of testimony before the grand jury will not be inquired into by the courts." We so stated in *Grimm v. State,* 6 Md. App. 321, 331. We had occasion to consider the rule again in *Pennington v. State,* 19 Md. App. 253. We mentioned the "historic bar against a judge's review, at a defendant's request, of grand jury action." We were not aware then, nor are we now, of any authority which compels us to remove that bar. We adhere to the rule.

Blondes seizes upon language in our opinion reversing his original conviction. Finding that the provisions of Article III, § 18,[20] are absolute and admit of no exception, we construed § 50 of Article III "* * * as a limited mandate providing for punishment of State Legislators guilty of bribery *if indictment and prosecution* therefor can be accomplished without impinging on the legislative privilege by introducing evidence of legislative acts." (emphasis added). Blondes takes the mention of "indictment" as

---

**20.** "No * * * Delegate * * * shall be liable in any * * * criminal prosecution, whatever, for words spoken in debate."

permitting a judge to review, upon an indictment of a State legislator for bribery, the competency of evidence before the grand jury, at least to the extent of determining whether indictment was accomplished by impinging on the legislative privilege by introducing evidence of legislative acts. We had no intention of removing the "historic bar." We did not mean that a judge may review the competency of the evidence before a grand jury. We meant no more than what is patent from the opinion as a whole — that evidence of legislative acts which impinge on the legislative privilege may be excluded at a trial on the general issue. This is evident from our holding: "Since the trial judge erred in relying upon substantive evidence of Blondes's legislative acts, we shall order a new trial purged of reference to legislative acts prohibited by the legislative privilege." 16 Md. App. at 184. It is also evident from our discussion of the holding: "[N]othing in our holding in any way derogates the egregious nature of bribery by a member of the Legislature nor suggests that it go unpunished. The Legislature has the power to keep its own house in order, * * * and the courts may still act under Article 27, Section 23 *if the prosecution can prove its case* without inquiry into legislative acts." *Id.*, at 183-184. (emphasis added). The indictment was valid on its face and Blondes was not entitled to inquire into the competency or the adequacy of the evidence upon which the grand jury acted. Nor was he entitled to inquire into the competency or the adequacy of the basis of the information drawn by the prosecutor. The claim that the information was tainted by the indictment is without substance.

We hold that the State was not precluded from trying Blondes on the information.

*Judgments affirmed; appellant to pay costs.*