175 So. 305

# OLIVER v. STATE.

## 5 Div. 232.

Supreme Court of Alabama.
May 20, 1937.

Rehearing Denied June 28, 1937.

W. Howell Morrow, of Lanett, and Jacob A. Walker, of Opelika, for appellant.

A. A. Carmichael, Atty. Gen., and Wm. H. Loeb, Asst. Atty. Gen., for the State.

**BOULDIN, Justice.**

Arthur Oliver was convicted of murder in the first degree and his punishment fixed at death. For decision on former appeal, see Oliver v. State, 232 Ala. 5, 166 So. 615.

On the second trial, now for review, the defendant interposed a plea of former acquittal of the charge under the counts of the indictment on which he was being tried. Demurrers to this plea were sustained. The basis of the plea was this:

The indictment charged the defendant with the murder of his wife, Vidie Oliver, in numerous counts. These counts varied in their averments of the means by which the alleged murder was committed. On the former trial, after the evidence was introduced, the solicitor, with the consent of the court, nol prossed counts 1, 2, 3, 6, and 8, and the trial proceeded to conviction, judgment, and sentence under counts 4, 5 and 7.

The nol prossed counts charged the wife was slain "by hitting her on the head with a stick," "by striking her with a stick," "by beating her with a stick," "by beating her head with a stick," and "by beating her with a club," respectively.

The remaining counts charged the slaying "by striking her with a blunt instrument a more accurate description of said instrument being to the grand jury unknown," "by beating her with his fist," and "by striking her in the head with some hard substance, to the grand jury unknown, or by kicking her with his feet," respectively.

■ Under the constitutional guaranty "That no person shall, for the same offense, be twice put in jeopardy of life or limb" (Const. § 9), the entering of a nol pros as to some of the counts in the indictment, without the consent of the accused, and after the trial is entered upon and the accused put in jeopardy, operates on acquittal of the specific offenses provable under such counts. Illustrations of this principle are found in cases where an indictment joins in separate counts kindred offenses growing out of the same transaction, or charge of different degrees of the offense under the law. A nol pros of a count charging one of the kindred offenses, or a higher degree of an offense, after the accused is put in jeopardy, operates an acquittal just as if a verdict of not guilty had been rendered as to such counts. 16 C.J. 248; Barnett v. State, 54 Ala. 579; Walker v. State, 61 Ala. 30; Blair v. State, 216 Ala. 463, 113 So. 414.

This case does not involve indictments of the class just mentioned.

■ Indictments for criminal homicide, in order to properly inform the accused of the nature of the offense charged, should aver the means by which the killing was accomplished, if known, or so far as known, with averments, such as appear in the counts remaining in this indictment, to the effect that the means are unknown further than as averred.

■ The proof must substantially conform to the averments on this point. Proof of means, not of like kind as that averred, is such a variance as to work a reversal of a conviction. 30 C.J. 134, § 339; page 101, § 289; Page 287, § 531; Huckabee v. State, 159 Ala. 45, 48 So. 796; Jones v. State, 137 Ala. 12, 34 So. 681.

■ The acquittal of a defendant because of variance does not prevent trial on a new indictment conforming to the case made by the evidence. The accused is held to have never been in jeopardy, since the crime charged is not the same in the sense that it is not sustainable by the same proof, as in the former indictment. 16 C.J. p. 243, § 380; Martha v. State, 26 Ala. 72.

This principle is recognized in our statute, Code § 4551, providing that, where no conviction can be had because of a variance, the defendant not consenting to an amend-

ment, the prosecution may be dismissed before the jury retires, as to any count in the indictment to which the variance applies, and another indictment ordered.

There is no occasion for such new indictment, if that on which the trial is being had already contains counts as to which no variance arises.

In the instant case it would appear the solicitor concluded the evidence would not justify a verdict on counts charging beating or striking with a stick or club as the means of committing the crime, and chose to stand on the allegations of the remaining counts.

■ This was entirely permissible. It is not material whether there was some evidence on which the jury may have found a verdict of guilty, under the nol prossed counts, as well as under those which remained. The means alleged in the latter were broader.

Indeed, the logic of the whole matter, the prevention of a second jeopardy for the same offense, does not prevent going on with a trial under a valid indictment, because counts have been nol prossed. The accused is still in the same jeopardy, not twice in jeopardy, in one trial under the same indictment, or such counts thereof as the state chooses to retain. If two counts were identical, provable by the same evidence, there can be no sound reason why one may not be nol prossed to avoid prolixity, and the trial proceed under the other.

There is only one jeopardy, one hazard to life or limb for the one offense; that the judgment of conviction on that trial was reversed and vacated on appeal of defendant does not affect the question. It is not so insisted. There was no error in sustaining the demurrer to the plea of former jeopardy.

Appellant strongly urges as ground for several alleged improper remarks of the solicitor in the closing argument for the State, followed by cheering among the courtroom audience.

The record discloses the following:

"During the concluding argument of the Solicitor for the State the Solicitor made the following statement to the jury:·

"'Gentlemen of the Jury, Mr. Walker had something to say in his argument to you about Mr. Mullins' being associated with the prosecution of this case. Mr. Walker referred to him, not as a prosecutor, but as a persecutor, and stated to you that he was here receiving blood money.'

"The defendant agrees that Mr. Walker, one of counsel for the defendant, had made substantially the statements in his argument to the Jury as stated by the Solicitor in his statement.

"Thereupon the Solicitor turned from the jury to Mr. Walker, one of the counsel for the defense, and said substantially as follows:

"'Mr. Walker, when you speak of blood money I want to ask you what are you down here for, your health, in this hot court room?'

"Upon the above statement being made by the Solicitor there was in the court room hand clapping * * * When this hand clapping began the Court of his own motion rapped for order and the hand clapping stopped and the Court of his own motion said:

"'We must have order in court. Mr. Sheriff if another one commits any disorder bring him up here to me and we'll put him in jail where he will behave; and you and your deputies keep a lookout for anybody who commits any disorder.'

"Thereafter there was no disorder of any kind whatever in the trial."

Defendant moved that the cause be withdrawn from the jury and a mistrial entered. Motion overruled and exception reserved.·

The court further said to the jury: "Gentlemen, I say this, you are to go by the evidence in this case, and the instructions of the court. Of course, you listen at the arguments, but what this audience does is not to affect your judgment in the matter."

Later in his oral charge, the court said: "Now, don't be affected or influenced in your judgment in the case by any clapping or demonstration that you have seen or heard on the part of the audience; because you are to be influenced by the evidence that is before you, in making up your verdict from that. You remember when you were sworn, you were sworn to render a true verdict, according to the evidence—and that rule extends all the way through the case."

Affidavits were presented on hearing of the motion for new trial, including those of the jurors.

These disclose differences touching the extent of the applause, and especially the contention that one of the jurors participated in the applause. The trial court could weigh them in the light of his own knowledge of the occurrences in his presence. It seems clear that he suppressed the demon-

stration instantly, probably before it became general, taking scrupulous care to properly warn the audience as well as instruct the jury.

It does not appear there was any great public excitement or mob feeling against defendant. This was a second trial; long after the homicide. The trial court, in passing upon the motion, expressed the view that the applause was not expressive of feeling against defendant.

Clearly, it was not occasioned by any remarks about the defendant or his guilt, but a passage between lawyers as to the relation of counsel to the case. The remarks of the attorney for the defense were improper.

The appearance of additional employed counsel to aid in the prosecution of criminal cases has always been recognized in this State as legitimate and proper. 6 Alabama Digest, page 511, Criminal Law, ☞640.

"Not to prosecute, but to persecute, here accepting blood money," for all that appears in the record, was such a reflection on counsel as to warrant a reply from the succeeding speaker. The solicitor's reply, tantamount to a reminder that counsel on one side was not in a position different from counsel on the other, was not gravely objectionable.

The applause seems to have been in approval of such sentiment.

This court, and the trial courts, are fully sensible of the lack of appreciation of the proprieties on the part of the public, or some of its members, when they engage in demonstrations of this sort in courts of justice.

Cheering is so common in all sorts of public gatherings where the element of contest is present that it would not be amiss for the courts on proper occasion to so warn the public, or so deal with infractors, that all men may come to know the courts will not tolerate such conduct.

But it would be an impeachment of the intelligence of the jury, their sense of duty, the will to perform that duty under oath, to declare their verdict was probably influenced by this occurrence, after all that was done and said by the trial judge. His procedure to suppress and rebuke the demonstration, and to eradicate any effect on the jury, is free from criticism. His views, on the merits of a motion touching matters occurring in his presence, are not to be lightly regarded. We find no error in denying the motion for new trial on this ground. Bass v. State, 219 Ala. 282, 122 So. 45; Hendry v. State, 215 Ala. 635, 112 So. 212; 16 C.J. page 1176 § 2700, note 12.

It is next insisted there was error in refusing the affirmative charge for defendant as to murder in the first degree, or, in any event, denying a motion for new trial on the ground that the evidence did not sustain a verdict for willful, deliberate, and premeditated murder with malice aforethought.

The argument is, to quote the brief for appellant: "The most that the evidence showed was that the death of the deceased resulted from an unlawful act, the beating of the deceased by the defendant, which was ordinarily not calculated to produce death. The specific intent to kill, which is a necessary ingredient of murder in the first degree, cannot be inferred from such circumstances. No specific malice or threats were shown. There was the entire absence of a motive on the part of the defendant in killing his wife. There was no evidence of the use of a deadly weapon likely to inflict a mortal blow, from which malice could be inferred."

Without going into all the harrowing details disclosed by the witnesses for the State, it is sufficient to say that if defendant, on two or more occasions during a period of several hours, sought, followed, and repeatedly beat the deceased, finally taking her home in the afternoon, where the circumstances disclose beatings continued until bloody, bruised, and severely wounded on the face and head, she was found dead some five or six hours after reaching home, it was for the jury to determine whether there was a willful and deliberate killing, in the absence of evidence of motive, or of the use of a deadly weapon. The intentional use of a deadly weapon raises a presumption of malice. The absence of such presumption by no means prevents the finding of all the elements of murder in the first degree from the facts and circumstances in evidence.

It is not to be said, however, there was no evidence of the use of a deadly weapon. The examining physician testified that the severe wounds on the face, and, specially, a blow on the head by some hard substance of sufficient force as to fracture or depress the outer skull, were sufficient to produce death. But a finding of murder in the first degree did not depend on whether these wounds or any one of them disclosed the use of a deadly weapon.

If death came from cumulative wounds and beatings so severe and so repeated as to convince the jury beyond a reasonable doubt of an intent to kill, all the elements of murder in the first degree were present. No provocation to mitigate or overcome the inference of malice, wicked motive was shown nor claimed.

The defendant, by way of mitigation, reduction of the degree of the crime from murder to manslaughter, or from murder in the first to murder in the second degree, offered evidence of his drunkenness at the time; evidence tending to show he was so drunk as to be incapable of forming and entertaining specific intent essential to a crime involving malice, or combined malice and premeditation.

█ A careful study of the evidence on this issue leads us to the same conclusion as on the former appeal, namely, that this was clearly a jury question, and the evidence, fully considered, was such that the jury's finding should not be disturbed.

█ Error is claimed in the admission of rebuttal testimony on the part of the State, in that such evidence related to defendant's condition as to drunkenness too remote from the time the homicide was committed.

The witness testified to his condition at a time variously estimated at three or more hours after death had ensued. How long after the violence ceased before deceased came to her death is indefinite. Direct evidence appears of violence at the time she was taken home, some five or six hours before the time deposed to by the State's witness. No hard and fast rule can be laid down fixing a definite number of hours after the killing within which the condition as to drunkenness may be received in evidence.

Much will depend on the particular case. In this case, defendant claimed he was so drunk, his mind so obliterated, that he did not remember anything as to events during, before, and many hours after the alleged homicide. This condition, according to defendant's testimony, continued for hours after the time testified to by the State's witness. We are clear in the opinion the State was entitled to prove the appearance, the words and acts indicative of sobriety of defendant, during the period which he claimed to be so under the influence of drink that no memory of events was retained.

We have considered the several questions presented in argument, and all others reserved in the record.

We deem further discussion unnecessary. We find no error to reverse.

The date for execution of the sentence having passed, it is ordered that Friday the 16th day of July, 1937, be and is set as the day on which the death sentence shall be executed according to law.

Affirmed.

All the Justices concur, except KNIGHT, J., not sitting.