## JAMES EDWARD WARD *v.* STATE OF MARYLAND

[No. 105, September Term, 1979.]

*Decided April 7, 1981.*

The cause was argued before SMITH, DIGGES, ELDRIDGE, COLE and DAVIDSON, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Kathleen M. Sweeney, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

In this criminal case, two different counts of the indictment charged the same offense. At the trial after jeopardy had attached, the State entered a nolle prosequi, without the defendant's consent, as to one of the counts, and the defendant was convicted on the other count. Later, the defendant was successful in having the conviction set aside and a new trial awarded. The issue before us now is whether the new trial may proceed in light of the earlier nolle pros of a count charging the same offense.

## I.

A Prince George's County grand jury, in a five count indictment, charged the defendant James Edward Ward with various offenses relating to the 1972 murder of Gerald Joseph Godbout, Jr., and the attempted murder of Dorothy Mae Ward. Count one charged the defendant with conspiracy to murder Dorothy Mae Ward; count two accused him of conspiracy to murder Godbout; count three expressly

charged him with being an accessory before the fact to the murder of Godbout; and the fourth count alleged that he attempted to murder Dorothy Mae Ward. Count five, charging the defendant with responsibility for the murder of Godbout, was the statutory form of indictment set forth in Maryland Code (1957, 1971 Repl. Vol.), Art. 27, § 616, which encompasses murder, manslaughter or "being an accessory thereto."[1] Consequently, the fifth count included a charge which was identical to the charge in the third count, namely being an accessory before the fact to the murder of Godbout. *See State v. Williamson,* 282 Md. 100, 107-110, 382 A.2d 588 (1978).

The defendant Ward was brought to trial in the Circuit Court for Prince George's County on all five counts, and the jury was empanelled and sworn. Therefore, jeopardy attached to all offenses covered by the indictment. *Crist v. Bretz,* 437 U.S. 28, 98 S. Ct. 2156, 57 L. Ed. 2d 24 (1978); *Blondes v. State,* 273 Md. 435, 444-446, 330 A.2d 169 (1975). At the close of the State's case, a nolle prosequi was entered by the prosecuting attorney, without the defendant's consent, with regard to counts four and five in their entirety The trial continued, and the jury found the defendant guilty on counts one, two and three. The court imposed a life sentence on each count, all three sentences to run concurrently, and the judgment was affirmed on appeal, *Ward v. State,* 30 Md. App. 113, 351 A.2d 452, *cert. denied,* 277 Md. 742 (1976).

Thereafter, the defendant filed a petition for relief under the Post Conviction Procedure Act, Code (1957, 1976 Repl. Vol.), Art. 27, § 645A *et seq.* The circuit court in the post conviction proceeding held that Ward had been denied the effective assistance of counsel with respect to counts one and two, the conspiracy counts, because of counsel's failure to plead limitations, and these counts were dismissed. The circuit court granted a new trial on the third count, apparently on the theory that certain evidence introduced solely to

---

1. The identical provision is contained in Code (1957, 1976 Repl. Vol., 1980 Cum. Supp.), Art. 27, § 616. Between 1975 and 1978, however, the provision was denominated § 616 (a) and its wording was slightly different. See Ch. 3, § 2, of the Acts of 1978.

prove conspiracy may have affected the jury's verdict on count three. The circuit court's decision was affirmed by the Court of Special Appeals in an unreported opinion.

Prior to his new trial on count three, the only remaining count, Ward filed three motions to dismiss, each on a separate ground. One motion asserted that the third count was defective under the common law doctrine of accessoryship; another claimed a denial of the right to speedy trial; and in the third motion Ward argued that a second trial would violate the prohibition against double jeopardy. The double jeopardy theory was that the nolle prosequi of count five at the first trial, after the attachment of jeopardy and without the defendant's consent, amounted to an acquittal of all offenses charged in the fifth count, including the accessory charge. Therefore, the argument continued, a second trial on the same accessory charge, under the third count, would violate the double jeopardy prohibition against a trial for the same offense following an acquittal.

The circuit court agreed with Ward that count three was invalid under the doctrine of accessoryship and dismissed the indictment on this ground.[2] The trial court did not rule upon the motions to dismiss on speedy trial and double jeopardy grounds. The State appealed the dismissal of the indictment, and this Court issued a writ of certiorari prior to any proceedings in the Court of Special Appeals. In this Court, in addition to defending the trial court's action, Ward contended that the indictment should have been dismissed on double jeopardy grounds. We reversed, holding that a trial under count three, for allegedly being an accessory before the fact to second degree murder, was not precluded by the doctrine of accessoryship. *State v. Ward,* 284 Md. 189, 396 A.2d 1041 (1978).[3] Because the trial court had not

---

**2.** The basis for the trial court's ruling was its view that count three was limited to the charge of accessory before the fact to *first* degree murder, and that, because the principals had been convicted of *second* degree murder, the defendant if convicted would not have an accompanying principal as required by the common law. The trial court also believed that the crime of accessory before the fact to *second* degree murder did not exist.

**3.** We held in *Ward* that under the Maryland common law doctrine of accessoryship, there may be an accessory before the fact to murder in the

decided the double jeopardy contention, we declined under Maryland Rule 885 to decide the question.

After the remand, and before the commencement of the second trial on count three, a hearing was held on the remaining motions to dismiss on speedy trial and double jeopardy grounds. The trial court denied both motions, and the defendant took an immediate appeal from the denial of the double jeopardy claim.[4] Again, before any proceedings in the Court of Special Appeals, we issued a writ of certiorari. We shall affirm.

## II.

The defendant initially relies upon the "well settle[d]" principle that the entry of a nolle prosequi, after jeopardy has attached, has the "effect" of an acquittal. Consequently, in the defendant's view, because count five charged him with being an accessory before the fact to the murder of Godbout, and because the nolle pros of count five "operated" as an acquittal, a second trial for the same offense is absolutely precluded. Under this theory, a retrial would violate that aspect of the double jeopardy prohibition based upon the common law plea of *autrefois acquit. See Pugh v. State,* 271

---

second degree and that the third count was sufficient to encompass this charge, 284 Md. at 197-201. We there set forth the related common law rules that "[a]n accessory cannot be tried, without his consent, before the principal. . . . [Citation omitted.] And an accessory could not be convicted of a higher crime than his principal." *Id.* at 201-202. Because of the second rule, we held that Ward could not be tried for being an accessory to first degree murder. Subsequent to our decision in the *Ward* case, we abrogated the common law rule that a final conviction of the principal is necessary before the accessory can be tried, with the new rule being applicable to all trials beginning on or after September 26, 1979. Lewis v. State, 285 Md. 705, 716, 404 A.2d 1073 (1979). Whether the *Lewis* opinion also had the effect of changing the related common law rule, that an accessory could not be convicted of a higher crime than the principal, need not be decided in this case. Even though Ward's new trial on count three will be after September 26, 1979, it is governed by the prior *Ward* opinion under the "law of the case" doctrine. Chaffin v. Taylor, 116 U.S. 567, 572, 6 S. Ct. 518, 520, 29 L. Ed. 727 (1886); Roberts v. Cooper, 20 How. 467, 481, 15 L. Ed. 969 (1858).

4. The denial of a motion to dismiss on double jeopardy grounds is immediately appealable. Pulley v. State, 287 Md. 406, 414, 412 A.2d 1244 (1980); Neal v. State, 272 Md. 323, 325-326, 322 A.2d 887, 889 (1974). However, the denial of a motion to dismiss on speedy trial grounds cannot be appealed until the final judgment after the termination of the trial. Stewart v. State, 282 Md. 557, 386 A.2d 1206 (1978).

Md. 701, 705, 319 A.2d 542 (1974); *State v. Shields,* 49 Md. 301, 303 (1878).[5]

If a nolle prosequi after the attachment of jeopardy, without the defendant's consent, were unqualifiedly an acquittal of the offense charged, regardless of the fact that the nolle prosequi related to only one of the two counts charging the same offense, there would be a strong basis for the defendant's argument. In fact, carrying the argument to its logical conclusion, not only would a second trial be precluded but a continuation of the original trial on the accessory offense, after an acquittal of that offense, would be deemed a second trial and would also be prohibited. *Block v. State,* 286 Md. 266, 407 A.2d 320 (1979); *Pugh v. State, supra.* However, the fallacy in the defendant's argument is his treating the nolle prosequi as an acquittal. Moreover, the argument fails to distinguish between the broad nolle pros of an *offense* and the nolle pros of one *count* when another viable count charges the same offense.

In light of the defendant's argument, it is necessary to examine the nature of a nolle prosequi and the often repeated statement that a nolle prosequi, after jeopardy attaches and without the defendant's consent, "operates as an acquittal."

### III.

Apparently the first reported case discussing the entry of a nolle prosequi in a criminal prosecution was *Stretton and Taylors Case,* 1 Leon. 119, 74 Eng. Rep. 111 (K.B. 1588), where the Attorney General entered a *"non vult prosequi"* for purpose of preventing a private prosecution. Since that time, the nolle prosequi has been a means whereby the gov-

---

5. The defendant's position is reasonably arguable only because the optional statutorily prescribed form of a murder indictment includes the charge of accessory before the fact. In jurisdictions where one cannot be convicted of being an accessory before the fact to murder under an indictment or count charging murder, an acquittal or a nolle prosequi as to the murder charge does not preclude a subsequent prosecution for being an accessory before the fact. State v. Jennings, 158 S.C. 422, 425, 155 S.E. 621, 622 (1930).

ernment exercises control over pending criminal cases. *See* Note, *Nolle Prosequi,* 41 N.Y.U.L. Rev. 996, 997 (1966). Thus, as Bishop points out, a "*Nolle Prosequi* in criminal practice (for it pertains also to civil), is a declaration of record from the legal representative of the government, that he will no further prosecute the particular indictment or some designated part thereof." 2 Bishop, *New Criminal Procedure* § 1387, p. 1194 (2d ed. 1913). It is an "abandonment of the prosecution," *Barrett v. State,* 155 Md. 636, 638, 142 A. 96 (1928), or a "discontinuance of a prosecution by the authorized attorney" for the state, *Commonwealth v. Hart,* 149 Mass. 7, 8, 20 N.E. 310 (1889).

The entry of a nolle prosequi is generally within the sole discretion of the prosecuting attorney, free from judicial control and not dependent upon the defendant's consent. *Barrett v. State, supra,* 155 Md. at 637-638; *Greathouse v. State,* 5 Md. App. 675, 685, 249 A.2d 207, *cert. denied,* 253 Md. 734 (1969); *Commonwealth v. Tuck,* 20 Pick. 356, 366 (Mass. 1838); Bishop, *supra,* § 1388; Hochheimer, *The Law of Crimes and Criminal Procedure* § 152, p. 170 (2d ed. (1904)).[6] A nolle prosequi may be entered as to an entire charging document, or one or more counts, or even a part of a count. The prosecution may nolle pros part of a count for the purpose, *inter alia,* of curing duplicity or of reducing a greater offense to a lesser included one. *Knotts v. State,* 237 Md. 417, 420, 207 A.2d 100 (1965); *Commonwealth v. Briggs,* 7 Pick. 177, 179 (Mass. 1828); Bishop, *supra,* §§ 1391-1392, pp. 1196-1197; Hochheimer, *supra.* However, the prosecution cannot, by a nolle pros of part of a count, change the entire nature of the offense charged. *Commonwealth v. Dunster,* 145 Mass. 101, 102-103, 13 N.E. 350 (1887).

It has been settled since at least the opinion of Chief Justice Holt in *Goddard v. Smith,* 6 Mod. 261, 1 Salk. 21 (1704),

---

6. There is authority, however, suggesting that the court may or may not permit the entry of the nolle prosequi in order to prevent injustice. Simmons v. State, 165 Md. 155, 165, 167 A. 60 (1933). *See* Maryland Rule 782 a. Moreover, in a minority of American jurisdictions, the courts very early

that while a nolle prosequi discharges the defendant on the charging document or count which was nolle prossed, and while it is a bar to any further prosecution under *that* charging document or count, a nolle prosequi is *not* an acquittal or pardon of the underlying offense and does not preclude a prosecution for the same offense under a different charging document or different count. More than one hundred years ago, this Court stated in *State v. Morgan,* 33 Md. 44, 46 (1870):

> "It is well settled by the authorities that a *nolle prosequi* ordinarily does not operate as a pardon; but that the accused remains subject to be proceeded against by another indictment for the same offence."

Later, in *Barrett v. State, supra,* 155 Md. at 638, the Court reiterated that when an indictment was nolle prossed or abandoned, "the case was terminated . . . and there can be no further prosecution under that indictment," but that the discontinuance by the prosecuting attorney was *not* the equivalent of "confessing a plea of not guilty." *Accord, Dealy v. United States,* 152 U.S. 539, 542, 14 S. Ct. 680, 681, 38 L. Ed. 545 (1894) ("a nolle works no acquittal, and leaves the prosecution just as though no such count had ever been inserted in the indictment"); *Dortch v. United States,* 203 F.2d 709, 710 (6th Cir. 1953), *cert. denied,* 346 U.S. 814, 74 S. Ct. 25, 98 L. Ed. 342 (1953); *People v. McGinnis,* 234 Ill. 68, 84 N.E. 687, 691 (1908); *Commonwealth v. Briggs, supra,* 7 Pick. at 179; *Commonwealth v. Wheeler,* 2 Mass. 172 (1806); *People v. Tenerowicz,* 266 Mich. 276, 253 N.W. 296, 304 (1934); *State v. McNeill,* 3 Hawks 183 (N.C. 1824); *Sellers v. Boone,* 261 S.C. 462, 200 S.E.2d 686 (1973).[7]

---

took the position that the consent of the court was required before there was a right to enter a nolle prosequi. *See, e.g.,* Anonymous, 1 Virginia Cases 139 (1803).

7. Not only does a nolle prosequi leave a defendant open for prosecution for the same offense under a different charging document or count, but there are limitations upon the principle that a nolle prosequi finally terminates a prosecution under a particular charging document. Thus, where the nolle prosequi as to one charge is induced by a guilty plea on another charge

In sum, absent constitutional or statutory provisions governing the effect of a nolle prosequi such as exist in some jurisdictions, there is nothing inherent in the nature of a nolle prosequi which causes its entry to operate as an acquittal of the underlying offense.

## IV.

The proposition that a nolle prosequi, without the defendant's consent, "amounts to" or is "tantamount to" or is the "equivalent of" or "operates as" an acquittal if it is entered after the attachment of jeopardy, is not a characteristic of a nolle prosequi itself. Instead, the proposition originated with, and is an aspect of, a body of double jeopardy law which developed in several nineteenth century American cases, both under American common law double jeopardy principles and under the Fifth Amendment.

Under the English common law, the pleas of former jeopardy (*autrefois acquit, autrefois convict* and *pardon*) provided protection to a defendant only if there had been an earlier acquittal or conviction or pardon. *Hoffman v. State,* 20 Md. 425, 434 (1863); *Boone v. State,* 3 Md. App. 11, 23-24, 237 A.2d 787, *cert. denied,* 248 Md. 733, *cert. denied,* 393 U.S. 872, 89 S. Ct. 161, 21 L. Ed. 2d 141 (1968); *United States v. Herbert,* 5 Cranch C.C. 87, 92, 26 Fed. Cas. 284, 286 (Fed. Case No. 15,354, C.C.D.C. 1836). However in several American jurisdictions, the principle developed that, because the defendant was entitled to a verdict once the trial began, if the trial (or portion of the trial relating to a particular offense) were aborted by certain actions of the court or prosecutor without the defendant's consent, thereby depriving him of his right to a verdict, then the prohibition

---

as part of an express or implicit plea arrangement, and the defendant thereafter sucessfully challenges the validity of the guilty plea and obtains a new trial, thereby rescinding the plea arrangement, the new trial ordinarily may, at the State's election, embrace the nolle prossed charge without the necessity of the State's obtaining a new charging document. This is true regardless of whether the nolle prosequi was entered before or after the attachment of jeopardy at the first trial. Sweetwine v. State, 288 Md. 199, 203, 421 A.2d 60, *cert. denied,* 449 U.S. 1017, 101 S. Ct. 579, 66 L. Ed. 2d 477 (1980); Miller v. State, 272 Md. 249, 256, 322 A.2d 527 (1974).

against double jeopardy would preclude a *subsequent* trial. This principle was applied when the trial was aborted either by the prosecutor's entering a nolle prosequi or otherwise abandoning the prosecution, or by the court's declaring a mistrial without a "manifest necessity" for so doing (whether *sua sponte* or upon the prosecutor's motion). The earlier opinions discussed both circumstances together, viewing mistrial cases as authority in cases involving a nolle prosequi, and vice versa. Many cases took the position that the termination of a trial under either of these circumstances would be deemed an acquittal, thereby bringing the matter within the common law plea of *autrefois acquit. See generally, e.g., United States v. Shoemaker,* 2 McLean 114, 27 Fed. Cas. 1067 (Fed. Case No. 16,279, C.C.D. Ill. 1840); *Commonwealth v. McCormick,* 130 Mass. 61 (1881); *Commonwealth v. Tuck, supra,* 20 Pick. at 365; *Commonwealth v. Wade,* 17 Pick. 395, 399 (Mass. 1835); *Mounts v. The State of Ohio,* 14 Ohio 295, 303-305, 45 Am. Dec. 542 (1846); *Commonwealth v. Cook,* 6 Serg. & Rawl. 577 (Pa. 1822); *State v. M'Kee,* 1 Bail. 651 (S.C. 1830).

The 1830 South Carolina case, *State v. M'Kee, supra,* represents perhaps the earliest application of this double jeopardy principle in the context of a nolle prosequi. The defendant in that case was being tried for murder. After all evidence had been introduced and during the closing arguments before the jury, the prosecuting attorney entered a nolle prosequi. The court held that this action amounted to an acquittal and that, therefore, the defendant could not be tried a second time for the offense, 1 Bail. at 656. In arriving at this conclusion, the court first reviewed the mistrial cases, particularly those involving hung juries where retrials were permitted under the manifest necessity standard,[8] and then stated (*id.* at 655):

---

**8.** *See, e.g.,* United States v. Perez, 9 Wheat. 579, 6 L. Ed. 165 (1824); State v. Woodruff, 2 Day 504 (Conn. 1807); Commonwealth v. Bowden, 9 Mass. R. 494 (1813); People v. Goodwin, 18 Johns. 187 (N.Y. 1820); People v. Olcott, 2 Johns. 301 (N.Y. 1801). *Compare* Commonwealth v. Cook, 6 Serg. & Rawl. 577 (Pa. 1822). Several of these opinions review in detail the early English authorities dealing with the discharge of juries before verdicts.

"The maxim of the common law, that 'no man shall be twice put in jeopardy of his life for the same offence,' is the foundation of the rule, which prevents the arrest of the trial after this stage, except for the causes already noticed.

"But say that the . . . question was a new one, and that it must be settled by general principles, could we fail to come to the same conclusion? Starting with the common law maxim before us, 'no man shall be twice put in jeopardy of his life for the same offence;' we ask what is meant by jeopardy of his life? It is where one is put upon his trial, upon a valid indictment . . . . It may result in his condemnation, and hence he is in jeopardy. To give every opportunity to innocence to escape, the law humanely affords to the prisoner the arbitrary choice of his jurors: he may challenge twenty of them peremptorily. After he has selected his jury, and they are charged with his case, can the Solicitor from defect of evidence, or an objection to a juryman, say, I will not now proceed with the trial; I will enter a *nolle prosequi,* and at another term give out a second one, and be prepared then with more evidence, and have a jury better suited to my wishes? This would, indeed, be literally twice putting the prisoner's life in jeopardy for the same offence. Carry the matter a little farther, and as was well argued by the learned counsel for the prisoner, allow this right to the Solicitor, and the prosecutor is prepared, by the first trial, to meet all the points of the prisoner's defence, and even to shape his own testimony to conviction. This would be making the Court hold out every inducement to perjury, and subornation of perjury, and convert jury trials into engines to oppress and destroy, at the pleasure of the prosecutor. Such is not, cannot, and never will be the law."

And later (*id.* at 656):

> "This Court has over and over again said, that in no case in the sessions will they grant a new trial, when the verdict is for the defendant. It is the extension of the principle that no man shall be twice put in jeopardy of his life, so far, that no man shall be twice tried for the same offence, when one jury have passed upon, and declared his innocence. It is giving to the prisoner the benefit, not only of the prejudices of his jurors, but even of the errors of the judge. Where would be this protection if the Solicitor could say, I find the jury are with you, and therefore, will enter a *nolle prosequi,* and give out, and try you on a second indictment? It would be, in effect, allowing to the Solicitor a power which this Court denies that itself possesses, of subjecting the prisoner to a new trial, as often as it might be necessary to obtain a verdict of guilty."

A few years later, in *Commonwealth v. Wade, supra,* 17 Pick. at 399-400, the Massachusetts court, although stating that necessity may warrant a mistrial and retrial "as if the jury cannot agrêe, or if one of them is taken ill," nevertheless took the position that when the prosecutor entered a nolle prosequi (because of a failure to prove an allegation in the indictment), the defendant was entitled to an acquittal barring a new trial for the same offense.

In the leading case of *United States v. Shoemaker, supra,* involving a nolle pros of the indictment after the jury was impaneled and the witnesses sworn, Justice McLean for the court, relying upon *Commonwealth v. Wade, supra,* and other state cases, held that under the Fifth Amendment's Double Jeopardy Clause, the nolle prosequi "must be considered the equivalent to a verdict of acquittal, and, as such, ... is a bar to the present [second] indictment." 27 Fed. Cas. at 1069-1070. The reason underlying the holding was the double jeopardy principle that "a jury having been sworn to

try his [the defendant's] case, he has a right to their verdict." *Id.* at 1069. The court in *Shoemaker,* after discussing the relationship between the mistrial and the nolle pros cases (*id.* at 1067-1068), also took the position that the "manifest necessity" standard governing the discretion of a court in declaring a mistrial was inapplicable to the entry of a nolle prosequi. The reason was, apparently, because the prosecutor's discretion in entering a nolle prosequi, unlike a court's declaration of a mistrial, is limited "by no fixed principle, or guided by no known rule," and is not reviewable. *Id.* at 1068-1069.[9]

An analysis of the leading Maryland case involving a nolle prosequi after the attachment of jeopardy, *Friend v. State,* 175 Md. 352, 2 A.2d 430 (1938), confirms that a nolle prosequi ordinarily "operates as an acquittal" of the underlying offense only if this result is required by double

---

**9.** The position taken in *Shoemaker,* that the "manifest necessity" exception has no application when a trial is aborted by a nolle prosequi, is generally followed in jurisdictions where the consent of the court is not required. In some jurisdictions, however, where a "nolle prosequi" after the beginning of trial apparently requires the consent of the court, the two concepts are often treated as the same for double jeopardy purposes. *See, e.g.,* McNeal v. Hollowell, 481 F.2d 1145 (5th Cir. 1973), involving a Mississippi prosecution where the prosecutor, during a trial, "requested that the case against McNeal be 'nolle prosequied' " (481 F.2d at 1148); the state trial court granted the request; and later the Fifth Circuit, applying the principles of the "mistrial" cases, held that there was no "manifest necessity" for the nolle prosequi and that a retrial violated the Fifth Amendment prohibition against double jeopardy. *See also* Rosser v. Commonwealth, 159 Va. 1028, 167 S.E. 257 (1933).

Whether a "nolle prosequi" is viewed like a mistrial motion might have a bearing upon the particular double jeopardy rules or theories which are applied in a case. In this connection, *see* People v. Somerville, 88 Ill. App. 2d 212, 232 N.E.2d 115 (1967), *cert. denied,* 393 U.S. 823, 89 S. Ct. 81, 21 L. Ed. 2d 94 (1968), where, after the trial began, the court granted the state's motion to "nolle prosse" on the ground of a defective indictment, and the appellate court held that a retrial was not barred because of the double jeopardy principle then recognized in Illinois (and also in Maryland at the time) that jeopardy does not attach in a trial based on an invalid indictment. (88 Ill. App. 2d at 216.) There was no mention of "manifest necessity" exception set forth in the mistrial cases. This opinion was before Benton v. Maryland, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969), holding that the Fifth Amendment's Double Jeopardy Clause applied to state prosecutions and rejecting the concept that jeopardy does not attach if the indictment is defective. Thereafter, the same conviction was attacked via the federal habeas corpus route, and this time the state's motion was treated as a mistrial motion, with the case being analyzed under the "manifest necessity" standard of the mistrial cases. Illinois v. Somerville, 410 U.S. 458, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973).

jeopardy principles. *Friend* is the Maryland case regularly cited for the proposition that a nolle prosequi, after jeopardy attaches, operates as an acquittal.[10] However, *Friend* neither established nor even mentioned any such principle. In *Friend,* the defendant was tried before a justice of the peace and convicted of receiving stolen goods under the value of $25.00. While his de novo appeal to the circuit court was pending, he was indicted for the same offense. After the indictment, the state's attorney entered a nolle prosequi with respect to the case pending on appeal. The defendant then moved on double jeopardy grounds to quash the indictment; the circuit court denied the motion; and the defendant was again tried and was convicted of receiving stolen goods. On the defendant's appeal to this Court, the State's argument was that jeopardy had not attached at the first trial because the justice of the peace lacked jurisdiction over the offense. This Court, however, held that in light of certain recent statutory changes, the justice of the peace did have jurisdiction and that, therefore, the defendant was in jeopardy in the first proceeding. 175 Md. at 354-355. The Court pointed out that jeopardy had attached because the trial had begun, witnesses had been called, etc. *Id.* at 356. The Court stated that the second trial under the indictment violated "the common law and . . . our constitutional prohibition with respect to placing a person in double jeopardy as to the same crime." *Id.* at 355.[11] The Court went on to state that the defendant had a right, as he saw fit, to proceed with the de novo appeal or allow the magistrate's judgment to stand. *Ibid.*[12]

---

**10.** *See* Bynum v. State, 277 Md. 703, 705, 357 A.2d 339, *cert. denied,* 429 U.S. 899, 97 S. Ct. 264, 50 L. Ed. 2d 183 (1976); Blondes v. State, 273 Md. 435, 443, 330 A.2d 169 (1975); Greathouse v. State, 5 Md. App. 675, 685-686 n. 5, 249 A.2d 207, *cert. denied,* 253 Md. 734 (1969); Boone v. State, 3 Md. App. 11, 25-26, 237 A.2d 787, *cert. denied,* 248 Md. 733, *cert. denied,* 393 U.S. 872, 89 S. Ct. 161, 21 L. Ed. 2d 141 (1968).

**11.** Since the Maryland Constitution did not, and still does not, contain a prohibition against double jeopardy (except to whatever extent it may be embodied in the Due Process Clause of Article 24 of the Declaration of Rights), the reference to "our constitutional prohibition" presumably was to the Fifth Amendment.

**12.** A case involving a situation similar to that in *Friend,* but arriving at a contrary result under double jeopardy principles, is State v. Cook, 96 N.H. 212, 72 A.2d 778 (1950). The New Hampshire court in *Cook* was of the view

This Court's decision in *Friend* was based entirely upon the application of double jeopardy principles. At no time did the Court suggest that the nolle prosequi effected an acquittal. On the contrary, the Court indicated that the result would be the same whether the nolle prosequi had been entered or not, as the Court, erroneously, treated the nolle prosequi as a complete nullity. *Id.* at 356.[13] Consequently, *Friend* merely stands for the principle that when the defendant is placed in jeopardy at his first trial, he has a right to accept the consequences of that proceeding, and a nolle prosequi and second trial on a new indictment for the same offense ordinarily violates double jeopardy principles.[14]

## V.

As reviewed above, the statement that a nolle prosequi, without the defendant's consent and after jeopardy attaches, "amounts to an acquittal" of the underlying offense, originated as an application of the same double jeopardy principle which prevents a retrial after an unconsented and

---

that, because of the nature of a de novo appeal under the law of that state, jeopardy had not attached when the nolle prosequi was entered. Because of certain differences between a de novo appeal in Maryland and one in New Hampshire as indicated by the opinion in *Cook,* the two cases may not be in conflict.

13. The Court concluded in *Friend,* 175 Md. at 356:

"The *nolle prosequi,* entered without the consent of the accused, under the circumstances of this case was improper and ineffective, and left undisposed of the case pending on his appeal, and his trial and conviction in the Circuit Court for Caroline County for the same offense, under the circumstances above related, placed this defendant in double jeopardy, contrary to the common law and our constitutional provisions. . . ."

14. Compare the view taken by the Court in *Friend* with regard to a proceeding aborted by a nolle prosequi, with the apparent divergent approach the Court had earlier taken in Hoffman v. State, 20 Md. 425 (1863), with regard to a trial aborted by an unconsented mistrial.

The idea that the *Friend* opinion involved something more than the application of general double jeopardy principles, and contained a holding that a nolle prosequi after jeopardy was effectively an acquittal regardless of double jeopardy considerations, appears to have originated with the opinion of the Court of Special Appeals in Boone v. State, *supra,* 3 Md. App. at 25-26. The interpretation may have been prompted by a difficulty in reconciling *Friend* with *Hoffman.* No *holding* of this Court has embodied the view of *Friend* set forth in *Boone.*

unnecessary mistrial. In accordance with its origins, the proposition that an unconsented nolle prosequi after jeopardy attaches "operates as an acquittal," has been applied to prevent trials only when that result is dictated by the prohibition against double jeopardy. The cases hold that, under circumstances where a continuation of a trial or a new trial for the same offense would not be precluded by double jeopardy principles, it is not precluded by the entry of a nolle prosequi.

Thus, in *Bynum v. State,* 277 Md. 703, 357 A.2d 339, *cert. denied,* 429 U.S. 899, 97 S. Ct. 264, 50 L. Ed. 2d 183 (1976), the defendant was charged in one count with armed robbery and in another count with simple robbery based on the same acts. After the attachment of jeopardy, and without the defendant's consent, the State nolle prossed the simple robbery count. The trial continued on the armed robbery charge, and the defendant was convicted. In affirming, we held that even though the simple robbery charge was a lesser included offense of armed robbery, and even though the two offenses must be deemed the same under the required evidence test of *Blockburger v. United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), the nolle prosequi of one count did not operate as an acquittal of the underlying offense so as to preclude the continuation of the trial on the other count, 277 Md. at 706-707. The reason for our holding was that settled double jeopardy principles did not preclude the continuation of the same trial on a different count, as the defendant was not being "twice put to trial." *Id.* at 707.[15] The holding in *Bynum* is in accord with the virtually unanimous view that a nolle prosequi or abandonment after jeopardy attaches of a greater or lesser included charge does not amount to an acquittal of the other charge deemed to be the same under the *Blockburger* test,

---

15. Compare the possible difference under Maryland law, in a nonjury trial, if there had been an actual acquittal instead of a nolle prosequi. Johnson, Etc. v. State, 238 Md. 528, 541-545, 209 A.2d 765 (1965), and cases there cited. *But cf.* Williams v. State, 204 Md. 55, 64-65, 102 A.2d 714 (1954). *See also* Dunn v. United States, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932); Dealy v. United States, 152 U.S. 539, 14 S. Ct. 680, 38 L. Ed. 545 (1894); Bickel, *Inconsistent Verdicts,* 63 Harv. L. Rev. 649 (1950).

and that the trial on the latter charge may continue. *See, e.g., Tyler v. State,* 5 Md. App. 158, 245 A.2d 592 (1968), *cert. denied,* 252 Md. 733 (1969), *cert. denied,* 398 U.S. 940, 90 S. Ct. 1846, 26 L. Ed. 2d 274 (1970); *Holtz v. State,* 1 Md. App. 358, 361-362, 230 A.2d 117 (1967); *Blair v. State,* 216 Ala. 463, 113 So. 414 (1927); *People v. Carothers,* 77 Cal. App. 2d 252, 254, 175 P.2d 30 (1946); *People v. Dreyer,* 71 Cal. App. 2d 181, 192-195, 162 P.2d 468 (1945); *Briola v. People,* 76 Colo. 489, 232 P. 924 (1925); *People v. Murray,* 73 Ill. App. 2d 376, 384, 220 N.E.2d 84 (1966); *Commonwealth v. Dean,* 109 Mass. 349 (1872); *State v. Puckett,* 39 N.M. 511, 514-515, 50 P.2d 964 (1935); *State v. Mundy,* 243 N.C. 149, 152, 90 S.E.2d 312 (1955); *Baker v. State,* 12 Ohio St. 214 (1861).

Moreover, the cases go beyond the situation of a count charging a greater offense and another a lesser included offense. It is generally held that the nolle pros of one count after jeopardy attaches has no bearing upon another count charging the *identical* offense, and that the trial may continue on the count charging that same offense. *United States v. McDaniel,* 538 F.2d 408, 414 (D.C. Cir. 1976); *Barsock v. United States,* 177 F.2d 141, 143 (9th Cir. 1949); *Oliver v. State,* 234 Ala. 460, 175 So. 305, 307 (1937); *Barnett v. The State,* 54 Ala. 579, 586 (1875); *People v. Horowitz,* 131 Cal. App. Supp. 791, 19 P.2d 874 (1933); *Gilliam v. The State,* 131 Tex. Cr. 8, 96 S.W.2d 86 (1936). *See also Dealy v. United States, supra,* 152 U.S. at 542; *Shafer v. United States,* 179 F.2d 929, 930 (9th Cir. 1950), *cert. denied,* 339 U.S. 979, 70 S. Ct. 1024, 94 L. Ed. 1384 (1950). *But see State v. Hess,* 240 Mo. 147, 158, 144 S.W. 489 (1912).[16]

---

**16.** This Court indicated in Simmons v. State, 165 Md. 155, 165, 167 A. 60 (1933), that where the same offense is charged by two different counts of an indictment, a nolle pros of one count would not amount to an acquittal on the other. After pointing out that it is proper for "different counts [to] present different aspects of the evidence of the same offense," as well as to charge different offenses, the Court went on to state that, in order to "guard against injustice and abuse," the trial court may exercise a sound discretion in "permitting a *nolle prosequi* as to a count or counts, or compelling the prosecution to elect on which count or counts to proceed." This statement obviously presupposes that the abandonment of one count will not prevent the trial from proceeding on another count charging the same offense.

On the other hand, cases actually holding that a nolle pros or abandonment of a charge or count was equivalent to an acquittal of the underlying offense all involved a second trial which would have been barred by the double jeopardy principle set forth in *Friend v. State, supra,* 175 Md. 352; *United States v. Shoemaker, supra,* 27 Fed. Cas. 1067; *State v. M'Kee, supra,* 1 Bail. 651; and similar decisions. They are cases where the prosecution, for whatever reason, nolle prossed a charge after jeopardy attached and instituted a *subsequent* prosecution which was inconsistent with settled American double jeopardy law. *See, e.g., Franklin v. State,* 85 Ga. 570, 11 S.E. 876 (1890); *Jones v. State,* 55 Ga. 625 (1876); *State v. Reed,* 168 Ind. 588, 81 N.E. 571 (1907); *State v. Madden,* 119 Kan. 263, 237 P. 663 (1925); *State v. Washington,* 33 La. Ann. 1473 (1882) (involving successive prosecutions for murder and accessory before the fact to murder); *State v. Linton,* 283 Mo. 1, 222 S.W. 847 (1920); *State v. Miller,* 272 N.C. 243, 158 S.E.2d 47 (1967); *State v. Pearce,* 266 N.C. 234, 237-238, 145 S.E.2d 918 (1966); *Mounts v. State of Ohio, supra,* 14 Ohio 295; *Gilliam v. The State,* 131 Tex. Cr. 8, 96 S.W.2d 86 (1936).

## VI.

Applying these principles to the instant case requires an affirmance of the trial court's denial of Ward's double jeopardy motion. The nolle pros of count five at the defendant's trial was not an acquittal as to the underlying offense of being an accessory before the fact to murder, and in no way precluded the continuation of the trial under count three, also charging him with being an accessory. The defendant was entitled to a verdict on the accessory charge, and he received it.

The State did not then attempt a prohibited subsequent prosecution under the nolle prossed count five. It did not, without any intervening action of the defendant, attempt a prohibited second prosecution under count three following the conviction on that count. Instead, the defendant successfully had his conviction on count three set aside; *he*

obtained a new trial, based upon *his* post conviction application. Under this circumstance, a second prosecution for being an accessory before the fact does not violate former jeopardy principles. An established exception to the prohibition against a second prosecution for the same offense is, of course, the rule of *United States v. Ball,* 163 U.S. 662, 671-672, 16 S. Ct. 1192, 41 L. Ed. 300 (1896), that normally a defendant can be tried a second time for an offense if he has successfully challenged his first conviction for that offense. *See Sweetwine v. State,* 288 Md. 199, 203-212, 421 A.2d 60, *cert. denied,* 449 U.S. 1017, 101 S. Ct. 579, 66 L. Ed. 2d 477 (1980); *Parks v. State,* 287 Md. 11, 15-16, 410 A.2d 597 (1980).[17]

In the present case, the unconsented nolle pros of count five, after the attachment of jeopardy, would preclude a later attempt by the State to indict and try the defendant for murder or manslaughter only. However, this would not be because the nolle prosequi was an acquittal on the murder charge. Instead, the result would be dictated by double jeopardy principles. Since count five included a murder and a manslaughter charge (as well as an accessory charge), and as jeopardy *had* attached, the defendant "ran the gantlet" on these charges at his first trial, and he was deprived of having them resolved by the trier of facts through no action or consent by him. Consequently, both the Fifth Amendment's Double Jeopardy Clause and Maryland common law double jeopardy principles would, under such circumstances, prevent the State from trying him a second time for murder or manslaughter. *Green v. United States,* 355 U.S. 184, 188, 78 S. Ct. 221, 224, 2 L. Ed. 2d 199 (1957) (the Double Jeop-

---

**17.** One of the limitations to the rule of *United States v. Ball* is that a retrial following the defendant's successful appeal may not encompass an offense for which there was an express or implied *acquittal by the trier of facts* at the first trial. Price v. Georgia, 398 U. S. 323, 329, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970); Benton v. Maryland, 395 U.S. 784, 796, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); Green v. United States, 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957); Sweetwine v. State, *supra,* 288 Md. at 208-212. This exception, however, does not help the defendant in the present case. As previously discussed, a nolle prosequi is not an acquittal. Moreover, as to the accessory offense in this case, there clearly was no express or implied acquittal by the trier of facts within the meaning of the above-cited decisions.

ardy Clause "prevents a prosecutor . . . from subjecting a defendant to a second prosecution by discontinuing the trial when it appears that the jury might not convict"); *Sweetwine v. State, supra,* 288 Md. at 209; *Friend v. State, supra.* However, the second trial for being an accessory resulted from the defendant's overturning the first accessory conviction, and therefore is not barred by the double jeopardy prohibition.

## VII.

Notwithstanding the foregoing, the defendant argues that *Bynum v. State, supra,* 277 Md. 703, and *Blondes v. State,* 273 Md. 435, 330 A.2d 169 (1975), support his position. Although both of those cases may have contained overly broad language, at least if taken out of context, their *holdings* are not inconsistent with the above analysis of nolle pros and double jeopardy principles and do not require a reversal in the present case.

### (a)

The defendant distinguishes *Bynum v. State,* and other cases holding that a nolle prosequi of one count does not preclude the continuation of the trial on another count charging the same offense, by arguing that those cases involved only a single trial, whereas the instant case involves successive trials. He points to the general statement in *Bynum* that "the entry of a *nolle prosequi* without the defendant's consent after jeopardy has attached operates as an acquittal, thereby precluding subsequent prosecution for the same offense." 277 Md. at 705. The defendant then relies upon the following conclusion in *Bynum* (*id.* at 709, emphasis supplied):

> "We therefore hold that the double jeopardy prohibition, though *barring subsequent prosecution for offenses charged in counts dismissed by a nolle prosequi* entered without the consent of the accused after jeopardy has attached, has no application in

the context of the same prosecution which continued on other counts. . . ."

The defendant emphasizes that *Bynum* involved "*one* and *only*" one trial, whereas in the case at bar the State is attempting to prosecute him a *second* time for an offense which was nolle prossed, namely being an accessory before the fact to murder. Under the defendant's view of the *Bynum* holding, as applied to the instant case, the nolle prosequi of count five did not prevent the continuation of the same trial on count three; however, it does prevent a *second* trial for the accessory offense included in count five.

The broad language of *Bynum,* that the double jeopardy prohibition would bar "subsequent prosecution for offenses charged in counts dismissed" by an unconsented nolle prosequi after jeopardy has attached, at first glance might appear to support Ward's position. Nevertheless, the defendant overlooks the often-expressed "admonition that language 'in a judicial opinion must be viewed in the context in which it appears,' " *Slate v. Zitomer,* 275 Md. 534, 538 n. 2, 341 A.2d 789 (1975), *cert. denied sub nom. Gasperich v. Church,* 423 U.S. 1076, 96 S. Ct. 862, 47 L. Ed. 2d 87 (1976). *See also Bringe v. Collins,* 274 Md. 338, 343, 335 A.2d 670, 674, *appl. denied,* 421 U.S. 983, 95 S. Ct. 1986, 44 L. Ed. 2d 475 (1975). *Bynum* did not involve a situation where the defendant was being tried a second time for an offense following his successful attack upon a prior conviction for that same offense. Moreover, there is no indication that the *Bynum* court, in speaking of a prohibited second trial for an offense which was previously nolle prossed, even contemplated a second trial after a successful challenge to an earlier conviction. Instead, the Court in *Bynum* was merely stating the general rule that the entry of an unconsented nolle prosequi, after jeopardy attaches, ordinarily precludes a subsequent prosecution for the offense. This general rule is simply an aspect of the basic principle that the double jeopardy clause ordinarily prohibits multiple prosecutions for the same offense. Therefore, under the facts of *Bynum,* in light of the absence of a successful appeal or post conviction proceeding by the defendant, the State would have been

precluded from bringing another prosecution for the offense of simple robbery which had been nolle prossed.[18]

The holding in *Bynum* does not help the defendant Ward. After Ward successfully attacked his conviction under count three of the indictment, he could be retried on count three under the rule of the *Ball* case. The case was no longer within the general rule, set forth in *Bynum,* that a second prosecution for a previously nolle prossed offense is precluded by the double jeopardy clause.

### (b)

The holding of this Court in *Blondes v. State, supra,* 273 Md. 435, also does not support the defendant's position. In that case, the defendant was indicted, tried and convicted for two bribery offenses. The Court of Special Appeals reversed the conviction because of the erroneous admission of certain evidence, stated that there were no deficiencies in the indictment, and remanded the case for a new trial. *Blondes v. State,* 16 Md. App. 165, 294 A.2d 661 (1972). After the remand, the defendant filed a motion to dismiss the indictment because of alleged improprieties in the grand jury's actions. This motion was never ruled upon. Thereafter, the State filed an information which charged the same two bribery offenses as charged in the indictment, in wording identical to that in the indictment. The State, however, did not nolle pros or otherwise abandon the indictment. Furthermore, during various pretrial matters, including the taking of a deposition, the State refused the defendant's request to inform him whether it was proceeding on the indictment (to which the defendant had asserted a defense) or the information. The State then went to trial on *both* charging documents. In the nonjury trial, after the testimony of the first witness, which related to the availability

---

18. Actually, because Bynum was convicted of armed robbery, and as simple robbery is a lesser included offense of armed robbery, double jeopardy principles would have prevented a later prosecution for simple robbery even if it had not been included in the first indictment and nolle prossed. Thomas v. State, 277 Md. 257, 353 A.2d 240 (1976).

of the deponent, and after the admission into evidence of the deposition, the State nolle prossed the indictment. The defendant then moved to dismiss the information on double jeopardy grounds; the court overruled the motion; and the defendant was convicted.

On appeal to the Court of Special Appeals, the intermediate appellate court rejected the double jeopardy claim on the ground that, at the time the nolle prosequi was entered, jeopardy had not attached. *Blondes v. State,* 19 Md. App. 714, 732-736, 314 A.2d 746 (1974). The Court of Special Appeals did appear to take the position that the double jeopardy claim depended on whether jeopardy had attached when the nolle prosequi was entered,[19] and that if jeopardy had attached, the nolle prosequi would have operated as an acquittal and precluded the continuation of the trial on a different charging document alleging the same offense, 19 Md. App. at 732-733.

The defendant Blondes then filed a petition for a writ of certiorari raising the question of when jeopardy attaches in a nonjury trial. The petition presented no issue concerning the effect of the nolle prosequi if jeopardy had attached, and the State filed no cross-petition challenging the position of the Court of Special Appeals on this issue. After this Court granted certiorari, both the State and the defendant in their briefs and oral arguments proceeded upon the assumption that, if jeopardy had attached when the nolle prosequi was entered, then the nolle prosequi was equivalent to an acquittal and the trial should not have proceeded on the same offense under the information.[20] This Court in its opinion accepted the parties' assumption without any detailed examination (273 Md. at 443) and agreed that "the critical ques-

**19.** The cases all indicate that if the nolle pros of the old charging document had been filed after the reversal and *before* jeopardy attached at the new trial, the new trial clearly could have proceeded under the new charging document under the principle of *United States v. Ball. See, e.g.,* People v. Grace, 88 Cal. App. 222, 263 P. 306 (1928); Pride v. The State, 125 Ga. 750, 54 S.E. 688 (1906); Jacoby v. State, 210 Ind. 49, 50-52, 199 N.E. 563 (1936); Smith v. Commonwealth, 104 Pa. 339 (1883).

**20.** In fact, at the oral argument in *Blondes,* the State expressly conceded this point.

tion in this case is whether jeopardy had attached to Blondes at the time the *nolle prosequi* was entered." *Id.* at 444. The Court held that because one witness had testified and the deposition evidence had been received, jeopardy had attached under either the majority rule or the minority rule concerning the attachment of jeopardy in a nonjury trial. *Id.* at 444-447.

Consequently, the only disputed issue in *Blondes* which this Court resolved, and the *holding* of the case, related to when jeopardy attaches in a nonjury trial. However, the assumption of the parties and the Court, that if jeopardy had attached the nolle prosequi operated as an acquittal and that, therefore, double jeopardy principles precluded the continuation of the trial for the same offenses on different charges, represented an inaccurate or overbroad view of nolle prosequi and double jeopardy principles, at least as applied beyond the facts of that case to a situation not involving separate charging documents. As previously discussed, a nolle prosequi itself does not operate as an acquittal of the underlying offense. Because the second trial in *Blondes* resulted from the defendant's successful challenge to his first conviction on grounds other than the sufficiency of the evidence, it was not a prohibited multiple prosecution because of the rule of *United States v. Ball.* In light of the *Ball* principle, it would seem that the *Blondes* case should have been treated, for double jeopardy purposes, as a single trial situation. And, as earlier shown, the nolle pros of one charge during a trial does not ordinarily prevent the continuation of the trial on another charge setting forth the identical offense.[21]

---

**21.** Our disapproval of certain language in the *Blondes* opinion should not be construed as casting any doubt upon the *holding* in that case. Instead, we fully adhere to what was there set forth concerning the attachment of jeopardy in a nonjury trial.

Moreover, we should not be understood as deciding at this time that the result in *Blondes* was incorrect. Although the result is questionable, we need not, and therefore do not, take a position on the matter at the present time. While the assumption in *Blondes* relating to the nature of a nolle prosequi and the concomitant effect of double jeopardy principles was overbroad, and would be incorrect if applied beyond the facts of that case, there is authority supporting the *Blondes* result under the peculiar circum-

## VIII.

In sum, apart from circumstances governed by the prohibition against double jeopardy or other criminal law requirements, the normal effect of a nolle prosequi in this State, *whenever entered,* will be to preclude further prosecution on the charging document, or count or part of a count which is nolle prossed. It will not normally prevent a prosecution for the same offense under another charging document or another count. Such further prosecution for the same offense, after a nolle prosequi, will generally be precluded only when this result is required by the Double Jeopardy Clause of the Fifth Amendment, or the Maryland common law double jeopardy prohibition, or other criminal law principles (e.g., speedy trial requirements, statutes of limitations, Ch. 700 of the Maryland Rules, etc.).

As the defendant's second trial under count three of the indictment is not precluded by double jeopardy principles, that trial may proceed.

*Judgment affirmed.*
*Petitioner to pay costs.*

---

stances there presented. As pointed out above, *Blondes* did not involve separate counts of the same charging document; instead, it involved a trial on two separate charging documents, one alleging the same offenses as the other. Although the pendency of one charging document does not prevent a trial on another charging document for the same offense, it is said that the prosecution will not be permitted to proceed to trial, with jeopardy attaching, upon both charging documents at the same time. *See, e.g.,* United States v. Haupt, 152 F.2d 771, 795 (7th Cir. 1945), *aff'd,* 330 U.S. 631, 67 S. Ct. 874, 91 L. Ed. 1145 (1947); United States v. Bowles, 183 F. Supp. 237, 242-243 (D. Me. 1958); United States v. Maloney, 26 Fed. Cas. 1149 (Fed. Cas. No. 15,713a) (C.C.D.N.Y. 1853); The State v. McKinney, 31 Kan. 570, 574, 3 P. 356 (1884); State v. Lindsay, 86 Vt. 201, 84 A. 612 (1912). On the other hand, there is contrary authority. *See* United States v. Herbert, 5 Cranch 87, 92, 26 Fed. Cas. 284 (Fed. Cas. No. 15,354) (1836); State v. Stewart, 47 La. Ann. 410, 16 So. 945 (1895). *See also,* relating to this matter, Barnes and Burgess v. State, 1 Md. App. 123, 126-127, 227 A.2d 763 (1967); State v. Dimler, 251 Ark. 753, 475 S.W.2d 152 (1972); Commonwealth v. Drew, 3 Cush. 279 (Mass. 1849). As previously indicated, however, we take no position on this issue, and view it as an open question if it should ever arise in this State.